[No. S026536. Dec. 30, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY LEE CROW, Defendant and Appellant.

COUNSEL

Ozro William Childs, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama and Ronald A. Bass, Assistant Attorneys General, Laurence K. Sullivan and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KENNARD, J.—We granted review in this case to address two related questions. First, when a defendant is convicted of welfare fraud (Welf. & Inst. Code, § 10980, subd. (c)), and the trial court denies probation, may the court order the defendant to pay restitution to the defrauded government

agency? We conclude that the controlling statute, Government Code section 13967, subdivision (c), empowers the trial court to do so.

The second issue concerns the manner in which the loss in cases of welfare fraud is calculated to determine the applicability of the sentence enhancement provision of Penal Code section 12022.6, subdivision (a). When defendant committed the crime in this case, that provision called for a one-year sentence increase if the loss to the victim exceeded $25,000. We conclude that the government's loss for purposes of the enhancement is the amount actually paid less the amount the defendant would have been eligible to receive absent the fraud. The defendant, however, bears the burden of proving that he or she would have been entitled to welfare benefits if the application for aid had been truthful instead of fraudulent. Here, defendant failed to demonstrate such entitlement; consequently, substantial evidence supports the jury's verdict finding the one-year sentence enhancement allegation to be true.

## I

In October 1987, Terri Acosta applied to the Lake County Department of Social Services for food stamps and for benefits under the Aid to Families with Dependent Children (AFDC) program. In her application, Acosta declared under penalty of perjury that she was living in a rented cabin at 16771 Forest Lake Drive; that defendant was the father of her three minor children; and that defendant was not living with her. The department approved her application, and between November 1987 and December 1990 paid Acosta $29,336 in AFDC benefits and $3,593 in food stamps. Throughout this time, Acosta repeatedly submitted declarations that defendant was not residing with her.

Acosta's declarations were false. Defendant lived with Terri Acosta from October 1987, when Acosta applied for welfare benefits, until his arrest in December 1990. At certain times during that period he was employed; at other times he received unemployment benefits. The income he received while living with Acosta would have reduced the amount of welfare benefits to which Acosta was entitled.

Defendant assisted Acosta in perpetrating welfare fraud on the Lake County Department of Social Services by purchasing a post office box in his own name but with a false address; by asking the landlord of their cabin to issue rent receipts in Acosta's name on occasions when defendant, rather than Acosta, paid the rent; and by executing a declaration, submitted in support of Acosta's 1990 application for food stamps, that he was not living with Acosta.

Defendant was charged with and, in a jury trial, convicted of aiding and abetting Acosta in committing welfare fraud (Welf. & Inst. Code, § 10980, subd. (c)).[1] The same jury also convicted Acosta of welfare fraud, but she is not a party to this appeal. The trial court sentenced defendant to two years in prison, and imposed an additional year, based on the jury's finding that the loss to the county exceeded $25,000 within the meaning of Penal Code section 12022.6, subdivision (a). The court also ordered defendant to pay the county $31,807 in restitution.

## II

Defendant argues that the trial court erred in ordering him to pay restitution to the Lake County Department of Social Services, claiming that the controlling statute, Government Code[2] section 13967, subdivision (c) (hereafter section 13967(c)), does not authorize restitution payments to government agencies.

In 1982, by initiative, the voters of California added a provision to the state Constitution establishing a new constitutional right: the right of every crime victim to obtain restitution from the perpetrator of the crime for losses suffered. (Cal. Const., art. I, § 28, subd. (b).) This provision also directed the Legislature to enact implementing legislation. One of the statutes the Legislature enacted to comply with this constitutional mandate was section 13967(c), which requires that in any criminal case in which the defendant is denied probation and the victim has "suffered economic loss as a result of the defendant's criminal conduct," the trial court shall order the defendant to pay restitution "to the victim."[3] Defendant asserts that a government agency is not a "victim" under section 13967(c). We disagree.

---

[1] Welfare and Institutions Code section 10980, subdivision (c), provides: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained or retained aid under the provisions of this division for himself or herself or for a child not in fact entitled thereto, the person obtaining such aid shall be punished . . . ."

[2] Unless otherwise stated, all subsequent statutory references are to this code.

[3] At the time defendant was convicted and sentenced, section 13967(c) provided:

"In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. Notwithstanding subdivision (a), restitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment. The making of a restitution order pursuant to this subdivision shall not affect the right of a victim to recovery from the Restitution Fund in the manner provided elsewhere, except to the extent that restitution is actually collected pursuant to the order. Restitution collected pursuant to

█ A "victim" is a "person who is the object of a crime . . . ." (Black's Law Dict. (5th ed. 1979) p. 1405, col. 2.) Although a defrauded government agency is not a natural person, it is nevertheless a victim of the fraud. When someone steals from a government agency, that agency, and the taxpayers who fund it, suffer a loss that is no less than the loss suffered by an individual whose property has been stolen.

In *People* v. *Narron* (1987) 192 Cal.App.3d 724 [237 Cal.Rptr. 693], one of the issues was whether the government was a "victim" under Penal Code sections 1203.1 and 1203.04, which authorize the trial court to order restitution in cases in which the defendant is placed on probation. The Court of Appeal concluded that the government could indeed be a victim. It explained: "[T]he policies of these provisions [(Pen. Code, §§ 1203.1, 1203.04)] favor a definition which includes the government where it suffered loss flowing from a defendant's criminal conduct. Including the government as a potential 'victim' accords with the court's discretion to employ probation conditions which ensure 'that amends . . . be made to society for the breach of the law, . . .' (Pen. Code, § 1203.1.) Moreover, the concept of restitution embodies not only the notion that people who suffer loss as a result of criminal activity should be compensated for those losses (Cal. Const., art. I, § 28, subd. (b)), but also a perception of the value of restitution as a 'deterrent to future criminality' *(People* v. *Lent* [1975] 15 Cal.3d [481,] 486 [124 Cal.Rptr. 905, 541 P.2d 545]), and 'to rehabilitate the criminal.' *(People* v. *Richards* [1976] 17 Cal.3d [614,] 620 [131 Cal.Rptr. 537, 552 P.2d 97].) Both aims are furthered by imposing a restitution condition in appropriate cases whether or not the victim is an individual. We therefore agree with the dictum that '[t]he government may be the beneficiary of [restitution] if it has incurred actual loss due to the crime, as in the instance of tax evasion or theft of government property, . . .' *(People* v. *Baker* (1974) 39 Cal.App.3d 550, 559 [113 Cal.Rptr. 248]; *People* v. *Burnett* (1978) 86 Cal.App.3d 320, 322 [150 Cal.Rptr. 126].)" *(People* v. *Narron, supra,* 192 Cal.App.3d at p. 732.)

The Court of Appeal in *Narron* construed statutes authorizing the trial court to order restitution as a condition of probation; here, we construe a

this subdivision shall be credited to any other judgments for the same losses obtained by the victim against the defendant arising out of the crime for which the defendant was convicted.

"Restitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim, or victims, for all determined economic losses incurred as the result of the defendant's criminal conduct.

"For any order of restitution made pursuant to this subdivision, the defendant shall have the right to a hearing before the judge to dispute the determination made regarding the amount of restitution."

Defendant's criminal conduct occurred over a three-year period, from November 1987 to December 1990. During that time the Legislature made minor revisions to section 13967(c). Those revisions do not affect the issue in this case.

statute authorizing the trial court to order restitution after denying probation. Nevertheless, the policies that led the *Narron* court to conclude that the government could be considered a victim are equally applicable here. Irrespective of whether the defendant is granted or denied probation, restitution ensures " 'that amends . . . be made to society for the breach of the law,' " enables "people who suffer loss as a result of criminal activity [to] be compensated for those losses," and acts "as a 'deterrent to future criminality' . . . and 'to rehabilitate the criminal.' " (*People* v. *Narron, supra,* 192 Cal.App.3d at p. 732.) These policies are best implemented by treating the government as a victim regardless of whether the defendant is placed on probation.[4] It is highly unlikely that the Legislature intended the term "victim" to include the government in statutes authorizing the trial court to impose restitution as a condition of probation—as explained in *People* v. *Narron, supra,* 192 Cal.App.3d 724—but that the Legislature did not wish the term to include the government in section 13967(c), which authorizes the trial court to order restitution while denying the defendant probation.

Well-established principles of statutory construction also suggest that a government agency should be treated as a "victim" within the meaning of section 13967(c). In *City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276-277 [123 Cal.Rptr. 1, 537 P.2d 1250], this court considered whether a government agency could be considered a "person" within the meaning of a statute stating that "no possession by any person, firm, or corporation" of property owned by a city shall ripen into a prescriptive right against that city. We concluded that a government agency could be considered a "person" within the meaning of the statute. ▮ We explained: "[D]efendants cite statements by this court that in the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute. [Citations.] But this rule excludes governmental agencies from the operation of general statutory provisions only if their inclusion would result in an infringement upon sovereign governmental powers. 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute

---

[4]In *People* v. *Narron, supra,* 192 Cal.App.3d 724, 733, the Court of Appeal held that the defendant could be ordered to pay restitution to a government agency even when the agency was not a "direct victim" of the defendant's criminal acts. Other cases have held that the trial court may not order the defendant to pay restitution to "indirect victims." (*People* v. *Wardlow* (1991) 227 Cal.App.3d 360, 370-371 [278 Cal.Rptr. 1]; *People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 999-1000 [262 Cal.Rptr. 141]; *People* v. *Williams* (1989) 207 Cal.App.3d 1520, 1523 [255 Cal.Rptr. 778]; see also *People* v. *Foster* (1993) 14 Cal.App.4th 939, 948-954 [18 Cal.Rptr.2d 1].) In this case, the government is a direct victim of the welfare fraud committed by defendant and codefendant Acosta. We express no view on whether a defendant may be ordered to pay restitution to an indirect victim.

apply to governmental bodies even though it used general statutory language only.' [Citations.] Pursuant to this principle, governmental agencies have been held subject to legislation which by its terms applies simply to any 'person.' [Citations.]" (*Ibid.*)

 In this case, the sovereign powers of the government would not be impaired if defrauded government agencies can be deemed victims within the meaning of section 13967(c). It is thus proper for us to conclude that the Legislature intended the term "victim," as used in section 13967(c), to include defrauded government agencies.

In arguing to the contrary, defendant points to section 13960, which defines a victim as a "person" who is a "resident of California."[5] Because, defendant asserts, a government agency is not a "resident of California," it cannot be a victim within the meaning of section 13967(c).[6]

We recently rejected a similar contention in *People* v. *Broussard* (1993) 5 Cal.4th 1067 [22 Cal.Rptr.2d 278, 856 P.2d 1134]. In that case, the trial court ordered the defendant to pay restitution to his crime victims for economic loss resulting from his conduct. Relying on section 13960, the defendant argued that because his victims had suffered no physical injuries, the restitution order was invalid. He contended that section 13960's

---

[5]In relevant part, section 13960 provides:

"As used in this article:

"(a) 'Victim' means any of the following residents of the State of California, or military personnel and their families stationed in California:

"(1) A person who sustains injury or death as a direct result of a crime.

"(2) Anyone legally dependent for support upon a person who sustains injury or death as a direct result of a crime.

"(3) Any member of the family of a victim specified by paragraph (1) or any person in close relationship to such a victim, if that member or person was present during the actual commission of the crime, or any member or person herein described whose treatment or presence during treatment of the victim is medically required for the successful treatment of the victim.

"(4) Any member of the family of a person who sustains injury or death as a direct result of a crime when the family member has incurred emotional injury as a result of the crime. Pecuniary loss to these victims shall be limited to only medical expenses, mental health counselling expenses, or both, of which the maximum award shall not exceed ten thousand dollars ($10,000).

"(5) In the event of a death caused by a crime, any individual who legally assumes the obligation, or who voluntarily pays the medical or burial expenses incurred as a direct result thereof."

[6]Defendant also contends that because section 13960 defines a victim as a "person," a governmental agency cannot come within its provisions. But, as explained above, governmental agencies are generally held subject to legislation that applies to any "person," so long as the legislation does not impair the government's sovereign powers. (*City of Los Angeles* v. *City of San Fernando, supra*, 14 Cal.3d at p. 277.)

definition of the term "victim"—which excludes persons who have suffered purely economic loss as a result of the defendant's criminal conduct—applied to the term "victim" as used in section 13967(c). Therefore, he argued, section 13967(c) did not permit the trial court to order him to pay restitution to victims who had suffered only economic loss as a result of his crimes.

We rejected the contention of the defendant in *Broussard;* holding that section 13960's definition of a victim as a person who suffers physical injury does not apply to section 13967(c). We explained that section 13967(c) was created by the Legislature to comply with the voters' mandate, in article I, section 28, subdivision (b) of the California Constitution, to enact legislation "directing trial courts to order defendants found guilty of criminal acts to pay restitution to *all* victims, not simply those who suffered a physical injury." (*People* v. *Broussard, supra,* 5 Cal.4th at p. 1072.) Had we concluded that the term "victim," as used in section 13967(c), was defined in the limited manner set forth in section 13960, we would have reached the absurd result that the Legislature knowingly failed to comply with this constitutional mandate. The legislative history leading to the enactment of section 13967(c), we found, demonstrated that the Legislature intended the term "victim," as used in that statute, to include victims who suffered purely economic losses, notwithstanding the contrary definition in section 13960.

Our holding in *People* v. *Broussard, supra,* 5 Cal.4th 1067, is fatal to defendant's claim that a "victim," as that term is used in section 13967(c), must be a person who is a "resident of California." Although only a "resident of California" can be a victim under section *13960, Broussard* held that section 13960's definition of a victim did not apply to section 13967(c). Accordingly, under the latter statute a victim need not be a "resident of California." For the reasons given above, we conclude that a defrauded government agency is a "victim" within the meaning of section 13967(c).[7]

### III

When defendant aided and abetted Acosta in committing the welfare fraud at issue here, Penal Code section 12022.6, subdivision (a), provided for a sentence increase of one year in prison if "the loss" to the victim exceeded $25,000.[8] Defendant argues that the evidence was insufficient to show that

---

[7]At oral argument, defendant also argued for the first time that in welfare fraud cases the defrauded government agency is not entitled to recover restitution because it can obtain reimbursement for its loss. (See § 13960, subd. (d).) This contention was not addressed by the Court of Appeal in its opinion, was not mentioned in defendant's petition for review, and has not been briefed by the parties. Accordingly, we decline to address it.

[8]When defendant committed the offense, Penal Code section 12022.6 stated in relevant part: "When any person takes, damages or destroys any property in the commission or

the county's loss was more than $25,000, and that therefore the one-year sentence enhancement should be stricken.[9]

The parties have not cited any legislative history revealing the Legislature's purpose in enacting Penal Code section 12022.6, which is the sentence enhancement provision involved here, and we have found none. (See generally, *People* v. *Ramirez* (1980) 109 Cal.App.3d 529, 539 [167 Cal.Rptr. 174]; Cassou & Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 44-45.) Decisions construing the statute have concluded that its purpose is to deter "large-scale" crime by imposing an increase in punishment when the property loss is great. (*People* v. *Kellett* (1982) 134 Cal.App.3d 949, 959 [185 Cal.Rptr. 1]; *People* v. *Hughes* (1980) 112 Cal.App.3d 452, 459 [169 Cal.Rptr. 364]; *People* v. *Ramirez, supra,* 109 Cal.App.3d 529.)

Here, the county paid codefendant Acosta a total of $32,929 in welfare and food stamp benefits. Defendant asserts that even if Acosta had not submitted false declarations to obtain aid, and had admitted that defendant was living in her home, she (and defendant) would have been entitled to some benefits. According to defendant, the net amount that he and Acosta gained as a result of their fraudulent acts was less than $25,000. In defendant's view, the manner by which the county's loss is to be calculated is to determine the amount the county actually paid out, and to subtract from this the money the county would have paid had the declarations submitted in support of the application for welfare benefits been accurate.

Defendant is right that in determining whether to impose the one-year sentence enhancement of Penal Code section 12022.6, subdivision (a),

attempted commission of a felony, with the intent to cause that taking, damage or destruction, the court shall impose an additional term as follows:

"(a) If the loss exceeds twenty-five thousand dollars ($25,000), the court shall in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted impose an additional term of one year."

The statute also provided for a two-year enhancement if the loss exceeded $100,000. (Pen. Code, § 12022.6, subd. (b).) In 1992, the Legislature increased the amount of loss that must occur for the one-year enhancement to be applicable from $25,000 to $50,000, raised the amount for the two-year enhancement to $150,000, and created additional, longer enhancements for greater losses. (Stats. 1992, ch. 104, § 1.)

[9]The Court of Appeal rejected defendant's contention, concluding that in determining the sufficiency of evidence to support the enhancement, the government's loss should be measured by the amount of welfare benefits codefendant Acosta had received, without subtracting the amount to which she would have been entitled had she and defendant filed a truthful application for benefits. But the Court of Appeal reversed and remanded the trial court's order that defendant pay restitution of $31,807, holding that in computing the amount of restitution the trial court should have subtracted the amount defendant and Acosta were eligible to obtain. The Attorney General did not seek review of the remand order, and it is not before us now.

the defrauded agency's "loss" should be calculated by subtracting the amount the government would have paid had no acts of fraud occurred from the amount the government actually paid. Any money that the government would have been obligated to pay had the fraud not occurred is not attributable to the fraud, and thus is not a "loss" arising out of the criminal offense.

If the government's loss resulting from a defendant's welfare fraud were based solely on the amount actually paid by the government, falsities resulting only in a small gain to the defendant could nevertheless result in a sentence enhancement in cases in which the defendant receives substantial welfare benefits, most of which would be payable regardless of the falsity. This would not implement Penal Code section 12022.6's goal of deterring large-scale crime.

In this case, however, the evidence does not show that defendant and Acosta would have been entitled to any welfare benefits if they had filed truthful declarations in support of their application for welfare benefits. Michael Owens, an eligibility worker for the Lake County Department of Social Services, testified for the prosecution. He stated that if defendant was living in the Acosta household, and if his only income during that time came from his unemployment benefits and his work at the Cobb Mountain Spring Water Company and at Jackson-Ley, Incorporated, he and Acosta would have been entitled to receive $12,102 in AFDC benefits and $1,122 in food stamps.[10] The amount of the overpayment arising from their fraudulent acts would thus have been $19,705, which is less than the $25,000 loss that, under subdivision (a) of Penal Code section 12022.6, the government must suffer before the statutory one-year sentence enhancement may be imposed.

Defendant, however, never produced any evidence that the two jobs mentioned were his sole sources of income. He may well have had additional jobs during the period in which codefendant Acosta fraudulently obtained welfare benefits. In his testimony, eligibility worker Owens explained that the county's knowledge of defendant's outside employment was limited: "We only have access to employment and earnings that's reported to the Employment Development Department." Obviously, if defendant's income were sufficiently high, Acosta would have not been entitled to any benefits.

By proving that, based on Acosta's false declarations, the county paid out more than $25,000 in food stamps and welfare benefits, the prosecution met

---

[10]Families are eligible for AFDC benefits even when both parents are living in the home, so long as the parents are unemployed. (Welf. & Inst. Code, § 11250, subd. (b).) Persons with part-time or intermittent employment may still be considered unemployed for the purpose of receiving AFDC benefits. (See Welf. & Inst. Code, § 11201.)

its burden of showing that the victim's loss exceeded $25,000 within the meaning of Penal Code section 12022.6, subdivision (a). If, because defendant was intermittently unemployed, some of that money would have been paid to Acosta regardless of the false declarations, and as a result the amount of the county's loss did not exceed $25,000, it was defendant's burden to show this. He did not do so. We therefore conclude that substantial evidence supports the jury's verdict finding the enhancement allegation to be true.

■ Defendant also argues that the evidence shows no acts by him to aid and abet Acosta's welfare fraud before 1990, when he asked his landlord to write receipts for the rent in Acosta's name, even when defendant paid it, and he executed a declaration asserting that he was not living in Acosta's home. Defendant contends that because the amount Acosta obtained in 1990 was less than the $25,000 set forth in Penal Code section 12022.6, the evidence is insufficient to support that statute's one-year sentence enhancement. We disagree. In 1987, defendant purchased a post office box, listing a false address. The jury could reasonably infer that defendant gave the false address to assist Acosta in the welfare fraud, by attempting to deceive county officials into believing that he was not residing with Acosta.

CONCLUSION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Arabian, J., Baxter, J., and George, J., concurred.

PANELLI, J., Concurring and Dissenting.—I would reverse that part of the judgment of the Court of Appeal affirming the superior court's judgment ordering defendant to make restitution in the amount of $31,807 to the Lake County Department of Social Services. Government Code section 13967, subdivision (c), authorizes restitution to be paid to a "victim" in cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct and the defendant is denied probation. Government Code section 13960, however, limits the definition of "victim" to those "persons" resident in California. I continue to believe, as the Legislature has expressly provided, that the definitions contained in Government Code section 13960 apply to Government Code section 13967, subdivision (c). (See *People* v. *Broussard* (1993) 5 Cal.4th 1067, 1077 [22 Cal.Rptr.2d 278, 856 P.2d 1134] (dis. opn. of Panelli, J.).) Therefore, I cannot agree with the majority's interpretation of Government Code section 13967, subdivision (c), because it is inconsistent with express statutory language. Under the existing statutory

scheme, a goverment agency cannot be a "victim" for purposes of restitution as it is neither a person nor a resident of California.

Mosk, J., concurred.