James Rem, d/b/a Central Supply Center and JR Associates, Defendants–Appellees.

No. 97–55280.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1998.

Decided July 20, 1998.

**FEDERAL TRADE COMMISSION,**
Plaintiff–Appellant,

v.

MTK MARKETING, INC., d/b/a District Supply Center and Central Supply Center; Nationwide Transport, Inc., d/b/a District Supply Center, Copy Resource Center, Inc., d/b/a District Supply Center and Central Supply Center; Intel Marketing of California, Inc., d/b/a District Supply Center; Telco Marketing, Inc., d/b/a Central Supply Center; Paragon Shipping, Inc., d/b/a National Supply Center; ACACIA PROPERTIES, INC., d/b/a National Supply Center; Sam June; Erick Graziano, a/k/a Eric Knight; Donald N. Ryan; Donna Green; Colleen McCullough; Jeanine Dora;

Lawrence DeMille–Wagman, argued, Stephen Calkins, General Counsel, Jay C. Shaffer, Deputy General Counsel, and Ernest J. Isenstadt, Assistant General Counsel, on the brief, Federal Trade Commission, Los Angeles, California, for the plaintiff–appellant.

Jeffrey D. Horowitz, Andrew B. Holmes, Dubois, Billig, Loughlin, Conaty & Weisman, Los Angeles, California, for the defendants–appellees.

Before: FLETCHER, D.W. NELSON, and SILVERMAN, Circuit Judges.

D.W. NELSON, Circuit Judge:

To resolve the instant appeal, we must determine whether the Federal Trade Commission ("FTC") is a "person" entitled to enforce liability on a surety bond. We conclude that it is.

### FACTUAL AND PROCEDURAL BACKGROUND

This case calls upon us to interpret Article 1.4 of California's Telephone Sellers Act ("Act"), which regulates the practices of telephone solicitors. Cal. Bus. & Prof.Code §§ 17511–17511.12. The Act provides:

It is the intent of the Legislature in enacting this article to (1) provide each prospective telephonic sales purchaser with information necessary to make an intelligent decision regarding the offer made, (2) safe-

guard the public against deceit and financial hardship, (3) insure, foster, and encourage competition and fair dealings among telephonic sellers by requiring adequate disclosure, and (4) prohibit representations that tend to mislead. This article shall be construed liberally in order to achieve these purposes.

§ 17511(b).

The Act requires all telephonic sellers to maintain a surety bond in the amount of $100,000 "for the benefit of any person suffering pecuniary loss in a transaction commenced during the period of bond coverage with a telephonic seller who violated" the Act. § 17511.12(a). The bond is to "include coverage for the payment of the portion of any judgment, including a judgment entered pursuant to Section 17203 or 17535, that provides for restitution to any person suffering pecuniary loss, notwithstanding whether the surety is joined or served in the action or proceeding." *Id.*

As telephonic sellers engaged in telemarketing in California MTK Marketing, Inc. ("MTK") and Copy Resource Center, Inc. ("CRC") were required to post a bond pursuant to section 17511.12. On November 13, 1992, Defendant Erick Graziano purchased from the Ranger Insurance Company a $50,000 bond, which was later increased to $100,000. Frontier substituted as surety on November 14, 1994, and the bond was amended on July 3, 1995, to cover Graziano, CRC, and MTK (collectively, "bondholders").

The FTC initiated the underlying action on March 7, 1996, by filing a complaint seeking injunctive relief and redress for consumers against seven corporate defendants and eight individual defendants (collectively, "defendants"), including the bondholders. The complaint alleged that the defendants had been involved in a variety of unfair and deceptive acts and practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, in connection with efforts to sell photocopier toner to the customers of other suppliers. The FTC submitted evidence showing that defendants had defrauded consumers of millions of dollars.

On August 5, 1996, the court entered stipulated final judgments against all eight indi-vidual defendants and against one corporate defendant, Intel Marketing of California. The court granted injunctive relief, and the defendants agreed to pay consumer redress. On September 18, 1996, a default judgment was entered against the remaining six corporate defendants, who were permanently enjoined from engaging in any telemarketing activities. In addition, MTK was ordered to pay consumer redress in the amount of $1,335,093. The remaining five corporations also were required to pay redress, totaling over $13 million.

Because the FTC had obtained a judgment in the underlying action for approximately $1.8 million, and because CRC and MTK had assets amounting to less than $131,000, the FTC filed a motion to enforce liability on the bond. Frontier opposed the FTC's motion on a variety of grounds. On December 6, 1996, the district court entered a minute order holding that, because the FTC was not a "person" under the Act, it could not enforce liability on the bond. The district court denied the FTC's motion "without prejudice to a proper party bringing a separate action in a court with proper jurisdiction." The FTC timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

## STANDARD OF REVIEW

■ The district court's decision involves the interpretation of state law, which we review de novo. *Mastro v. Witt*, 39 F.3d 238, 241 (9th Cir.1994).

## DISCUSSION

*I. The FTC is a proper party to enforce liability on the bond.*

■ The Act provides that bonds may be enforced by "the Attorney General, district attorney, city attorney, or any other person who obtained a judgment for restitution against the seller ...." § 17511.12(c)(2). The FTC argues that the definition of "person" should be read expansively, thereby conferring standing upon the FTC to enforce liability. Based upon our review of the applicable case law, statutory language, and legislative history, we agree.

## A. Case law

Supreme Court precedent does not support the notion that a governmental agency can never be a "person." In *United States v. Cooper Corp.*, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941), the Supreme Court was called upon to interpret the meaning of "person" under the Sherman Act, which defined "person" to include corporations and associations. To resolve the issue, the Court considered "[t]he purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute." *Id.* at 605, 61 S.Ct. 742. The Court concluded that under antitrust law, a federal governmental agency could not qualify as a "person" entitled to treble damages. *Id.* at 606, 61 S.Ct. 742. The very next year, however, the Court applied the same analytical framework to hold that a state could constitute a "person" entitled to collect treble damages under the Sherman Act. *See Georgia v. Evans*, 316 U.S. 159, 162, 62 S.Ct. 972, 86 L.Ed. 1346 (1942). More recently, in *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978), the Court noted that the definition of "person" was "inclusive rather than exclusive," *id.* at 312 n. 9, 98 S.Ct. 584, and concluded that the State of India was a person under the Clayton Act, *id.* at 313, 98 S.Ct. 584.

Applying the analysis outlined in *Cooper*, we have held that under section 1755 of the California Unemployment Insurance Code, the postal service is a "person," on whom the Employment Development Department could serve a notice of levy, despite the fact that section 1758 of the insurance code defines "person" to "include[ ] this State and any county, city and county, municipality, district or other political subdivision thereof." *Employment Develop. Dep't. v. United States Postal Serv.*, 698 F.2d 1029, 1032–33 (9th Cir.1983) (per curiam) *rev'd on other grounds in Franchise Tax Bd. v. United States Postal Serv.*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984). We reasoned that because there was no requirement that the statute explicitly include the United States or its agencies within the definition of "person," we should not interpret the statute in a manner that treated the federal government differently from the state government absent some indication of legislative intent. *Id.; see also People v. Crow*, 6 Cal.4th 952, 26 Cal. Rptr.2d 1, 864 P.2d 80, 84–85 (1993) (holding that defrauded state government agency was a "person" entitled to seek restitution from wrongdoer); *City of Los Angeles v. City of San Fernando*, 14 Cal.3d 199, 123 Cal.Rptr. 1, 537 P.2d 1250, 1306–07 (1975) (holding that statute prohibiting possession of city property "by any person, firm or corporation" could preclude possession by a government agency); *Flournoy v. State*, 57 Cal.2d 497, 20 Cal.Rptr. 627, 370 P.2d 331, 332 (1962) (applying to a state government a wrongful death statute attaching liability to any "person" responsible for another's death); *Gomes v. County of Mendocino*, 37 Cal.App.4th 977, 44 Cal.Rptr.2d 93, 96 (1995) (statute covering "a person, firm, corporation, partnership or association" included federal government). Thus, although the case at bar presents an issue of first impression, ample precedent supports the position that the term "person" may include a governmental agency.

## B. Statutory Language

■ The Act states explicitly that "It is the intent of the Legislature in enacting this article to ... safeguard the public against deceit ... This article shall be construed liberally in order to achieve [this] purpose[ ]." § 17511(b). We conclude that treating the FTC as a person would be consistent with the Act's purpose by furthering the goal of consumer redress. Indeed, if the FTC were not able to enforce liability, it is unclear whether the bond would serve its intended purpose of consumer protection: Neither the State of California nor any individual consumer has sought enforcement. As such, an interpretation of "person" precluding FTC enforcement would provide Frontier with a windfall and undermine the purpose of the Act. Moreover, evidence in the record indicates that the Attorney General of California believes that FTC enforcement would serve the Act's purpose; his interpretation is entitled to deference. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that considerable weight should be accorded executive depart-

ment's construction of statutory scheme it is entrusted to administer).

 Frontier does not dispute that the Act was intended to protect consumers. Rather, it argues that the Act was intended to benefit only the citizens of California and, consequently, may not be enforced by the federal government to provide redress for out-of-state residents. Frontier's position is not persuasive. Although the bond must be written "in favor of the State of California," *see* § 17511.12(a), this drafting requirement does not restrict who may enforce the bond. Rather, the bond exists "for the benefit of *any* person suffering pecuniary loss in a transaction commenced during the period of bond coverage with a telephonic seller who violated" the Act. § 17511.12(a) (emphasis added). Accordingly, we reject Frontier's *ejusdem generis* argument, because it is settled law that the doctrine of *ejusdem generis* should not be applied to defeat legislative intent. *See, e.g., Leslie Salt Co. v. United States*, 896 F.2d 354, 359 (9th Cir.1990); *Walker v. Meehan*, 194 Cal.App.3d 1290, 240 Cal.Rptr. 171, 175 (1987).

 Frontier insists that section 17511.2(d) explicitly limits the parties who may enforce liability on the bond. It is true that section 17511.2(d) provides that " 'Person' includes an individual, firm, association, corporation, partnership, joint venture, or any other business entity." Nonetheless, Frontier's argument is without merit because "[i]n terms of statutory construction, use of the word 'includes' does not connote limitation. In definitive provisions of statutes and other writings, 'include' is frequently, if not generally used as a word of extension or enlargement rather than as one of limitation or enumeration." *In re Yochum*, 89 F.3d 661, 668 (9th Cir.1996) (citations and internal quotations omitted). As such, the Act merely provides examples of who may enforce the bond.

*C. Legislative history*

Legislative history also supports the position that the FTC may enforce liability on the bond. Prior to 1993, telephonic sellers were required to post a $50,000 bond, which could be enforced only by the Attorney Gen-

eral, a district attorney, or a city attorney. In 1993, the Act was amended to increase the bond requirement to $100,000 and to permit enforcement actions by "any other person who obtained a judgment for restitution against the seller." The Legislature indicated that the change was intended to "expand the situations under which, the parties to whom and the procedures whereby, the bond may be reached for payment of consumer losses or for violations of the law's requirements." Senate Rules Committee Report for California Assembly Bill No. 1421 (1993). We conclude that permitting the FTC to enforce the bond will expand opportunities for redress, as well as the group of people entitled to benefit from the bond.

*II. Allowing the FTC to enforce the bond would not violate the Tenth Amendment.*

 Frontier argues that allowing the federal government to use legislation enacted by the State of California to accomplish its goals violates the Tenth Amendment. Frontier cites two cases; neither supports its argument, as both cases involve whether treating a governmental entity as a person would diminish its own sovereignty. *See Community Memorial Hosp. of San Buena Ventura v. County of Ventura*, 56 Cal. Rptr.2d 732, 739, 50 Cal.App.4th 199, 49 Cal.App.4th 527 (1996) (allowing county to be sued would infringe on county's sovereignty); *Churchill v. Parnell*, 170 Cal.App.3d 1094, 216 Cal.Rptr. 876, 878–79 (1985) (including state in definition of person would infringe on state's sovereignty by restricting its ability to protect fish and wildlife). Here, allowing FTC enforcement would not compromise the State of California's sovereignty in any way. In fact, FTC enforcement would assist the State of California in furthering the policy interests the Act was designed to serve. Moreover, although the Tenth Amendment precludes the federal government from commandeering a state by forcing it to enact or enforce a federal regulatory program, *New York v. United States*, 505 U.S. 144, 161, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), no such conduct occurred here.

*III. The FTC has the necessary statutory authority to seek enforcement of the judgment.*

■ Finally, Frontier suggests that the FTC can take action to collect a judgment only if the authority is specifically provided by statute. This argument is without merit. The Ninth Circuit has held that "the authority granted by [the Act] is not limited to the power to issue an injunction; rather, it includes the authority to grant any ancillary relief necessary to accomplish complete justice," including the power to "order restitution." *FTC v. Patron I, Corp.,* 33 F.3d 1088, 1102 (9th Cir.1994) (citations and internal quotations omitted). We see no reason why the FTC should not be permitted to grant ancillary relief by enforcing liability on the bond.

## CONCLUSION

For the reasons stated above, we find that the FTC is a "person" within the meaning of the Act.

**REVERSED AND REMANDED.**