[No. A107402. First Dist., Div. Four. May 23, 2005.]

THE PEOPLE, Plaintiff and Appellant, v.
DEBRA RENEE FORTUNE, Defendant and Respondent.

**COUNSEL**

Bill Lockyer, Attorney General, Gerald A. Engler, Assistant Attorney General, David W. Paulson, District Attorney, and Joel S. Coble, Deputy District Attorney, for Plaintiff and Appellant.

R. Stevens Condie, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**SEPULVEDA, J.**—Defendant Debra Renee Fortune entered a plea of no contest to a charge of welfare fraud and was placed on probation with specified conditions, including the payment of restitution. The amount of restitution to be ordered was contested and thus determined after submission of written argument on the issue.[1] Ultimately the trial court agreed with defendant's proposed method of calculating the amount of restitution, and ordered defendant to pay $3,235 in restitution of cash benefits paid by the California Work Opportunity and Responsibility to Kids (CalWORKS) program (formerly Aid to Families with Dependent Children) and $44 in restitution for overpayment of food stamps.[2] This timely appeal by the

---

[1] At the time of the entry of defendant's plea, the district attorney specifically requested that the court retain jurisdiction on the issue of restitution and calendar the matter later so he could "present a figure to the Court and to the defense." The minute order reflecting the entry of defendant's plea also indicates that the amount of restitution was to be determined later.

[2] The probation report had originally recommended that the food stamp restitution be in the amount of $1,312; the prosecution's brief on restitution requested food stamp restitution in the amount of $1,153.

prosecution raises the sole issue of whether the trial court erred in its determination of the proper amount of restitution for food stamp over-issuance. We find no error in the trial court's method of calculation and affirm.

## I.

## BACKGROUND

The underlying facts in this case are not in dispute. Defendant received public aid in the form of cash aid from the CalWORKS program and food stamps during the period from January 1, 2001 to August 1, 2001. Defendant failed to report income from her job at Greyhound Lines, Inc., during part of the time she was on welfare. This income would have impacted both the amount of cash benefits she would otherwise have received, as well as the amount of food stamps.

The parties do not disagree as to the amount of restitution for the cash benefits received by defendant. Their disagreement is the correct method of calculation of restitution for food stamps. At the core of this disagreement is whether, in determining the amount of food stamp allocation that would have been received but for defendant's fraud, the amount of cash aid received during the same period should be included as income. The trial court agreed with defendant's position that the cash aid should not be included; the prosecution argues that it should. This conflict over the proper method of calculating restitution for food stamp over-issuance in cases of welfare fraud is apparently a recurring one in Solano County, resulting in several appeals currently pending before different divisions of this court.

## II.

## DISCUSSION

A. *Failure to serve welfare agency.*

The prosecution first contends that the court's order was made in violation of due process because the victim, the Department of Health and Social Services (Department), did not receive notice of the motion to modify the amount of restitution, as required by Penal Code section 1202.4, subdivision (f)(1).[3] The prosecution did not raise this issue below, prior to the court's

---

[3] Penal Code section 1202.4, subdivision (f)(1) provides: "If a motion is made for modification of a restitution order, the victim shall be notified of that motion at least 10 days prior to the proceeding held to decide the motion."

issuance of the restitution order, and it was therefore waived. (See, e.g., *People v. Hector* (2000) 83 Cal.App.4th 228, 237 [99 Cal.Rptr.2d 469].) Even if the claim had been preserved for appeal, however, it would fail as there was no motion to modify restitution. The order at issue here is the original restitution order.

B.  *Method of calculation of restitution for food stamp over-issuance.*

■ In reviewing a trial court's restitution order, we will not overturn its decision unless it constitutes an abuse of discretion. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67]; *People v. Thygesen* (1999) 69 Cal.App.4th 988, 992 [81 Cal.Rptr.2d 886].) As the court in *Thygesen* stated, "As the trial court is vested with great discretion in fixing a restitution award, some cases have held that appellate review is guided by the abuse of discretion standard. [Citations.] Under that standard, we are required to keep in mind that even though the trial court has broad discretion in making a restitution award, that discretion is not unlimited. . . . [T]he trial court must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious. [Citations.]" (*Ibid.*) An abuse of discretion will not be found if there is a factual or rational basis for the amount of restitution ordered. (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562 [65 Cal.Rptr.2d 679].)

■ Both sides agree that the basic method of calculating the amount of restitution in welfare fraud cases was determined by the California Supreme Court in *People v. Crow* (1993) 6 Cal.4th 952 [26 Cal.Rptr.2d 1, 864 P.2d 80]. According to the *Crow* court, the amount of loss to the county due to welfare fraud, and therefore the amount of restitution which should be ordered, is determined by "subtracting the amount the government would have paid had no acts of fraud occurred from the amount the government actually paid. Any money that the government would have been obligated to pay had the fraud not occurred is not attributable to the fraud, and thus is not a 'loss' arising out of the criminal offense." (*Id.* at pp. 961–962.) This is consistent with Penal Code section 1202.4, subdivision (f),[4] which provides, "In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, *based on the amount of loss claimed by the victim* or victims or any other showing to the court." (Italics added.) This method of calculation also comports with section 1202.4, subdivision (f)(3), which provides: "the restitution order . . . shall be of a dollar amount that is sufficient to fully *reimburse* the victim or victims for every determined *economic loss* incurred as the result of the defendant's criminal conduct . . . ." (Italics added.) Thus, the amount of

---

[4] All further section references are to the Penal Code.

restitution ordered is intended "to make [the] victim whole, not to give a windfall." (*People v. Thygesen, supra*, 69 Cal.App.4th at p. 995.)

Limiting the amount of restitution so as to make the victim whole, but no more, was affirmed in *People v. Hudson* (2003) 113 Cal.App.4th 924 [7 Cal.Rptr.3d 114], decided by Division Three of this court. In *Hudson*, another case out of Solano County, the court was faced with the issue of whether the court should give the defendant the benefit of the 20 percent disregard of earned income normally applied when calculating the amount of food stamp entitlement, when calculating the amount of food stamp restitution after a defendant underreported her income. The 20 percent disregard of income is required by state regulation when calculating food stamp entitlement, to encourage individuals to work. The social services department refused to apply the 20 percent disregard when calculating the amount of restitution owing, resulting in "a reimbursement figure larger than the difference between the amount defendant received and the correct amount based on an accurate report of her income." (*People v. Hudson, supra*, 113 Cal.App.4th at p. 928.) The court held that the department's calculation method "violated *Crow's* clear directive," as it produces "a larger figure than the difference between what defendant actually received and what she would have received absent the fraud. This position cannot be squared with *Crow*." (*Id.* at pp. 928–929.)[5]

■ In order to be consistent with the rule stated in *People v. Crow, supra*, 6 Cal.4th at page 952, restitution for over-issuance of food stamps should be set by calculating the amount of food stamps that would have been issued to defendant had no fraud occurred. To this point, both sides are in agreement. One method which might be employed in order to reimburse the Department for its actual losses would be to look first at the amount of cash aid that a defendant would have been entitled to but for lack of reporting of income from employment. Once that amount is determined, the court would determine the amount of food stamps that would have been issued, given a defendant's unreported employment income plus any cash aid that would have been paid out, had the defendant accurately reported his or her employment income. The difference between that amount of food stamps and the amount actually received would be ordered paid as restitution. The resulting figure would reflect the actual loss the Department suffered, which is the only restitution to which it is entitled. This method of calculation is

---

[5] The prosecution does not object to the application of *People v. Hudson, supra*, 113 Cal.App.4th 924, in the present case and agrees that the restitution amount for food stamp over-issuance should be based on an income figure which gives defendant the benefit of the 20 percent disregard of earned income.

consistent with *Crow* and with *People v. Hudson, supra,* 113 Cal.App.4th at page 924, and with the statutory authority for restitution in criminal cases, set forth above.

The prosecution argues that the court must, when determining the amount of restitution for over-issuance of food stamps, look to the total amount of income defendant actually received during the relevant time period, including both unreported income from employment and the actual amount of cash aid paid out. This is so, they argue, because the Department's regulations require inclusion of cash aid received in an individual's total income figure for calculation of initial food stamp entitlement. However, even though the Department may, by its regulations, include income from aid in its initial calculation of the amount of food stamps that an individual would be entitled to, that is not controlling when setting the amount of restitution. Inclusion of the actual amount of cash aid paid during a given period in the individual's total income is reasonable when determining the initial entitlement to food stamps, as all of that income is available during the period in question and might be used for the purchase of food. This calculation method, when applied to restitution for over-issuance of food stamps would, however, result in a restitution award in excess of the actual losses suffered by the Department.

Food stamp entitlement is inversely proportional to income. As a household's income rises due to inclusion of cash overpayments in total income, the amount of food stamps to which the household would be entitled decreases proportionately. Thus, the amount of food stamp over-issuance is greater if the entitlement is based on income including cash benefits overpayments than if the entitlement is calculated without addition of cash benefit overpayments. The actual amount of loss to the Department, however, is the amount of overpayment or over-issuance of food stamps—i.e., the amount they actually paid less that which they would have paid if defendant had reported her employment income. Had defendant accurately reported that income, her cash benefits would have been reduced and her entitlement to food stamps would have been based upon her employment income plus that reduced amount of cash benefits.[6]

■ Turning to the facts of the present case, although it is not entirely clear how the trial court computed its restitution figures, it did indicate that it was accepting defendant's method of calculation, which both sides agree did not include in income the amount of cash aid actually paid to defendant

---

[6] We note that by following the prosecution's method of calculation, a defendant would be required to pay restitution of over-issuance of food stamps based upon an income figure which would include overpayment of cash benefits, which the defendant would also be required to pay back in restitution.

during the relevant time period. Defendant's calculation appears to be based upon the premise that, but for defendant's failure to report her employment income during this period, she would have been entitled to zero cash aid. The prosecution does not appear to contest that assumption. Assuming that premise is accurate, defendant calculated the correct amount of restitution for the over-issuance of food stamps by relying solely on defendant's income from employment during the relevant time period; this is the calculation method apparently adopted by the court. Thus the trial court's determination of restitution for the over-issuance of food stamps, following defendant's method of calculation, was consistent with the method detailed above, and was neither arbitrary nor capricious. No abuse of discretion occurred.[7]

## III.

## DISPOSITION

The judgment is affirmed.

Kay, P. J., and Rivera, J., concurred.

---

[7] Division One of this court has recently reached the same conclusion in *People v. Akins* (2005) 128 Cal.App.4th 1376 [27 Cal.Rptr.3d 815].