Filed 9/14/16  P. v. Perez CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANGEL REYNAGA PEREZ,<br><br>    Defendant and Appellant. | H041838<br>(Santa Clara County<br>Super. Ct. No. CC942929) |

Defendant Angel Reynaga Perez was convicted by jury trial of multiple counts of robbery (Pen. Code, §§ 211, 212.5, subd. (c))[1] and other crimes, and numerous enhancement allegations were found true, including that defendant had taken property valued at more than $65,000 (§ 12022.6, subd. (a)(1)) in the commission of the robbery counts.  The court found true that defendant had suffered a prior conviction that was a strike (§§ 667, subds. (b)-(i), 1170.12) and a serious felony (§ 667, subd. (a)) and that he had served a prison term (§ 667.5, subd. (b)) for that conviction.  Defendant was sentenced to 47 years and eight months in prison, which included a one-year term for the section 12022.6 enhancement, and ordered to pay restitution of $168,375.  The court also imposed a $5,000 restitution fine and a $5,000 parole revocation fine.

---

[1]    Subsequent statutory references are to the Penal Code.

Defendant appealed from that judgment, and this court found that the trial court had erred in imposing terms for both section 186.22 gang enhancements and section 12022.53 firearm enhancements as to the same counts and that the court's restitution order was not supported by substantial evidence.  We reversed the judgment and remanded solely for resentencing and a new restitution hearing.

At the resentencing hearing, the court imposed a sentence of 38 years and four months, which included a one-year term for the section 12022.6 enhancement.  The court imposed a $10,000 restitution fine and a $10,000 parole revocation fine.  At the new restitution hearing, the court ordered defendant to pay $63,830 in restitution.

In this appeal, defendant contends that (1) the trial court's restitution order is again unsupported by substantial evidence, (2) the court's imposition of a sentence for the section 12022.6 enhancement was unauthorized, and (3) the restitution fine and parole revocation fine must be reduced to $5,000 each.  The Attorney General concedes that the two fines must be reduced, and we accept the concession.  We reject defendant's other contentions, modify and affirm the judgment, and affirm the restitution order.

## I.  Background

Defendant participated in a gang robbery of Joe Escobar Diamonds in May 2009.  The robbers smashed a display case and took 14 Rolex watches.  At defendant's trial, there was testimony that the 14 watches had a retail value of $163,000 and had cost Joe Escobar Diamonds $96,000.

At the new restitution hearing, the prosecution submitted a one-page document it had received from Joe Escobar Diamonds, which was entitled "Joe Escobar Restitution."  This document contained a chart that listed 11 five-digit numbers under the heading "Item" followed by figures under the headings "Cost," "Retail," and "Joe Escobar Loss."  At the bottom of the chart, it said:  "TOTAL LOSS" followed by "62,630."  Below the

chart, the document stated: "Watch Loss = 62,630 [¶] Display Case Repair = 1,200 [¶] TOTAL LOSS: 63,830." The document contained no other information.

The trial court understood this document to represent "the cost of each of the stolen items, the . . . anticipated retail sales price of those items and the difference between the two." The court stated: "As I understand it, counsel, they have represented that they were compelled to sell each of these watches simply at cost and forego any revenue or profit therefrom because of the fact that they had been stolen and some of them had in fact been damaged." Both the prosecutor and the defense attorney agreed that this was true. "[Prosecutor]: That's correct." "[Defense Attorney]: Your Honor, as I mentioned in chambers, it appears that Joe Escobar purchased the watches for a certain amount and then sold the watches for what -- the cost that they incurred in purchasing them."

Although the defense attorney did not contest the fact that Escobar had sold the watches at "cost," she argued that it was speculative to conclude that Escobar would have sold the watches for their retail price if they had not been stolen. She argued: "So in terms of actual loss, it does not appear that we have anything other than speculation for what they could have sold the watches for rather than an actual loss that they sustained." "[I]t would be my argument . . . that the difference is too speculative to be seen as an actual loss."

The court disagreed: "I have a recollection of testimony that was elicited during the trial to the effect that Rolex has control . . . over the precise amount that may be charged for those watches. [¶] In that case, and in addition to the fact that there was evidence as to the actual price that was marked on those watches that was introduced at the time of trial, and there's no indication that that is inconsistent with the retail price listed here, the loss of revenue is easily determinable in this case . . . ." The court set aside the previous restitution order and entered a new restitution order consistent with the document: $63,830.

## II.  Discussion

## A.  Restitution Order

Defendant contends that the trial court abused its discretion in ordering restitution for 11 watches because all of the watches were returned to Joe Escobar Diamonds and only four of them were damaged.  He claims that Joe Escobar Diamonds was not entitled to any restitution for the watches that were returned to it undamaged.  Defendant concedes that section 1202.4, subdivision (f)(3)(E) authorizes restitution for lost "profits," but he contends that there was no proof that Joe Escobar Diamonds suffered any lost profits.

"[T]he restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶]  (E)  Wages or profits lost by the victim . . . ."  (§ 1202.4, subd. (f)(3)(E).)

"[W]e review the trial court's restitution order for abuse of discretion."  (*People v. Giordano* (2007) 42 Cal.4th 644, 663).  "No abuse of that discretion occurs as long as the determination of economic loss is reasonable, producing a nonarbitrary result.  Factors relevant to that determination will necessarily depend on the particular circumstances before the court."  (*Id.* at p. 665.)  "The burden is on the party seeking restitution to provide an adequate factual basis for the claim."  (*Id.* at p. 664.)  A prima facie showing may be made based on the victim's statement of the amount of the loss.  (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172 (*Chappelone*).)  "Once the victim has made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim."  (*People v. Prosser* (2007) 157 Cal.App.4th 682, 691.)

Defendant claims that the court abused its discretion in awarding restitution for watches that were returned to Joe Escobar Diamonds undamaged.  The court awarded restitution for the difference between the retail price and the cost of the watches that were

4

returned to Joe Escobar Diamonds on the ground that, due to the taking of the watches, the watches could no longer be sold at retail prices and had to be sold at cost. The trial court concluded that Joe Escobar Diamonds was entitled to restitution for this differential because this amount represented Joe Escobar Diamonds's lost profits.

Defendant claims that there was no evidence of lost profits because "it is not clear that those watches were **actually** sold at cost." Joe Escobar Diamonds's written statement implicitly claimed that it had sold the watches at cost. At the restitution hearing, both the prosecutor and the defense attorney agreed with the trial court that Joe Escobar Diamonds claimed it had actually sold the watches at cost.[2] This claim shifted the burden to the defense to establish otherwise. The defense failed to produce any evidence to the contrary and instead accepted this claim. Hence, we reject defendant's claim that Joe Escobar Diamonds was required to submit additional proof to support its claim that it had sold the watches at cost.

Defendant contends that Joe Escobar Diamonds was not entitled to recover its lost profits. He bases this contention on *Chappelone*, a case cited by this court in its opinion reversing the original restitution order and cited by the trial court when it imposed the new restitution order. The defendants in *Chappelone* took a large quantity of merchandise from Target. The stolen merchandise was "largely damaged and unsellable" *before* defendants took it. (*Chappelone*, *supra*, 183 Cal.App.4th at p. 1176.) Much of the stolen merchandise was returned to Target, but Target deemed it unsaleable and donated it all to charity at a total loss. Instead of basing the restitution order on the value of the merchandise at the time of the taking, the trial court based the restitution order on the original retail price of the merchandise in an *undamaged* state. (*Id.* at pp. 1163-1170.)

---

[2] Defendant contends that the defense attorney did contest this assertion, but the text that he quotes is actually the defense attorney's contention that Joe Escobar was required to establish that "they could have sold the watches for" the retail price.

5

The Court of Appeal found that the trial court had abused its discretion in three respects. First, the trial court had abused its discretion in basing restitution on the original retail price of the merchandise because "the retail price of these goods was not reflective of their value to Target" due to the damaged nature of the merchandise. (*Chappelone*, *supra*, 183 Cal.App.4th at p. 1173.) Indeed, most of the stolen merchandise had little or no value to Target when it was stolen. (*Id.* at pp. 1173-1174.) "Target was entitled only to restitution equal to the value of the stolen property, and by all accounts at the hearing, the value was substantially less than the last retail price for most goods. By failing to account for the fact that a majority of the stolen merchandise was already damaged at the time of the theft—and thus destined for donation—the trial court awarded Target restitution for property that was of greater quality than that which defendants stole." (*Id.* at pp. 1176-1177.)

Second, Target was not entitled to recover lost profits since there had been no proof of any. Most of the stolen merchandise was unsaleable before it was stolen. There was no evidence that Target actually lost any profits due to the taking of the small amount of new and saleable items because those items were "mass-produced consumer goods that Target sold in abundance," and there was no evidence that the taking of the merchandise affected Target's stock of them. (*Chappelone*, *supra*, 183 Cal.App.4th at p. 1179.) Third, Target was not entitled to both recover restitution for the " 'full retail value' " of the stolen merchandise and retain possession of the recovered merchandise "except to the extent there is some loss of value to the property." (*Id.* at pp. 1180, 1181.)

The facts of this case are dramatically different from those in *Chappelone*. Unlike the damaged and broken merchandise in *Chappelone*, all of the watches in this case were undamaged and for sale at full retail prices when they were taken. Thus, Joe Escobar Diamonds stood to make a profit on these watches in the absence of the robbery. Furthermore, the trial court could have readily inferred that, unlike the easily replaceable "mass-produced consumer goods" taken from Target in *Chappelone*, which the Court of

6

Appeal found were never out-of-stock, the Rolex watches taken from Joe Escobar Diamonds were not mass-produced and could not be easily restocked.  By stealing a large number of Joe Escobar Diamonds's Rolex watches, the robbers deprived Joe Escobar Diamonds of the profits that it would have made had it been able to sell those Rolex watches without them being stolen.  Nor is this a case in which Joe Escobar Diamonds was awarded restitution for the full retail value of the items and was permitted to retain them.  The court awarded restitution only for the difference between the full retail value of the watches and the price at which Joe Escobar Diamonds was able to sell the watches.  No windfall resulted from this award.  The restitution award was limited to the lost profits, not the full retail value.

The trial court did not abuse its discretion in awarding Joe Escobar Diamonds restitution for its lost profits on the watches taken by the robbers.

## B.  Section 12022.6 Enhancement

Defendant asserts that the trial court's imposition of a one-year term for the section 12022.6 enhancement was an unauthorized sentence.  His theory is that the new restitution order establishes that the amount of the loss was less than $65,000.[3]

"When any person takes, damages, or destroys any property in the commission or attempted commission of a felony, with the intent to cause that taking, damage, or destruction, the court shall impose an additional term as follows:  [¶]  (1) If the loss exceeds sixty-five thousand dollars ($65,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has

---

[3]     His other theories are dependent on his challenge to the restitution award, which we have already rejected.

7

been convicted, shall impose an additional term of one year." (Former § 12022.6, subd. (a); Stats. 2007, ch. 420, § 1.)[4]

Defendant's contention is based on a misunderstanding of the statute. He contends that "economic loss" for restitution purposes is the same as "loss" under section 12022.6. It is not. His reliance on the California Supreme Court's decision in *People v. Crow* (1993) 6 Cal.4th 952 (*Crow*) is misplaced. In *Crow*, the defendant had aided and abetted Acosta, the mother of his children, in her fraudulent taking of welfare benefits from the county. He was convicted of aiding and abetting the taking, and a section 12022.6 enhancement was found true based on a loss exceeding $25,000. He challenged the sufficiency of the evidence to support the enhancement on the ground that the prosecution was required to prove (and had not proved) that, had there been no fraud, Acosta would have received more than $25,000 *less in welfare benefits*, since, he claimed, she still would have been entitled to some welfare benefits. "According to defendant, the net amount that he and Acosta gained as a result of their fraudulent acts was less than $25,000." (*Crow*, at p. 961.)

The California Supreme Court rejected his contention but accepted its premise. "Any money that the government would have been obligated to pay had the fraud not occurred is not attributable to the fraud, and thus is not a 'loss' arising out of the criminal offense." (*Crow*, *supra*, 6 Cal.4th at p. 962.) Nevertheless, the evidence was sufficient to support the enhancement. "By proving that, [due to the fraud], the county paid out more than $25,000 in food stamps and welfare benefits, the prosecution met its burden of showing that the victim's loss exceeded $25,000 within the meaning of Penal Code section 12022.6, subdivision (a). If . . . some of that money would have been paid

---

[4]      Section 12022.6 has been repealed and reenacted since defendant's 2009 offenses. The relevant text is unchanged in the current version. (Stats. 2010, ch. 711, § 5, § 10 [new statute operative on January 1, 2012].)

[regardless of the fraud], and as a result the amount of the county's loss did not exceed $25,000, it was defendant's burden to show this." (*Crow*, at pp. 962-963.)

While *Crow*, like this case, concerned the determination of the amount of the "loss" under section 12022.6, *Crow*, unlike the case before us, concerned the possibility that not all of the total amount of welfare benefits received by Acosta had been *fraudulently taken*, since Acosta might have been entitled to a portion of that amount in the absence of the fraud. Here, on the other hand, it is undisputed that watches worth at least $96,000 were taken. *Crow* simply does not speak to this issue, so it provides no support for defendant's contention.

Defendant also relies on *People v. Beaver* (2010) 186 Cal.App.4th 107 (*Beaver*). In *Beaver*, the defendant, who worked at a ski resort, staged an accident in order to receive medical treatment for a preexisting injury and a cash settlement from the resort. (*Id.* at p. 110.) The resort paid over $44,000 for his medical bills and over $39,000 in legal fees associated with the defendant's civil action against it. (*Id.* at p. 113.) The defendant was convicted of theft, and a section 12022.6 allegation, which at that time was triggered by a loss over $50,000, was found true. (*Beaver*, at pp. 113, 116.) On appeal, he claimed that the enhancement allegation was not supported by substantial evidence because he had not taken the legal fees. (*Id.* at pp. 115-116.) The Court of Appeal rejected his contention. It concluded that section 12022.6 applies to "what the victim lost, not what the defendant gained." (*Beaver*, at p. 118.) Since the resort had lost the legal fees as a result of defendant's crimes, those fees combined with the medical expenses supported the enhancement allegation.

*Beaver* has nothing to do with the case before us. The 14 watches were all taken from Joe Escobar Diamonds. Their value plainly exceeded $65,000. Although they were recovered by the police, a victim's recovery of stolen property has no impact on the validity of a section 12022.6 enhancement based on the value of the recovered property. In *People v. Bates* (1980) 113 Cal.App.3d 481, 484 (*Bates*), the burglars were

9

immediately apprehended, and all of the loot was returned to the victim. (*Bates*, at p. 483.) The court held that the burglars' taking of the property nevertheless constituted a "'loss'" within the meaning of section 12022.6. (*Bates*, at pp. 483-484.) "The word 'loss,' as used in section 12022.6 in the context of the *taking* of property, therefore includes *any dispossession* which constitutes theft of the victim's property." (*Bates*, at p. 484, second italics added.) Similarly, in *People v. Ramirez* (1980) 109 Cal.App.3d 529 (*Ramirez*), the court rejected the defendants' argument that section 12022.6 applied "only if the victim's *ultimate out-of-pocket loss* exceeds" the statutory amount. (*Ramirez*, at p. 539, italics added.) "To interpret the statute in the manner suggested by appellants would be to attribute to the Legislature an intent to depart radically from well-established law that the recovery of stolen property by the victim is no defense to crime and is only relevant in mitigation of punishment when the defendant voluntarily returns it prior to being charged." (*Ramirez*, at p. 539.)

In *Bates* and *Ramirez*, very temporary dispossessions of funds followed by complete recoveries of those funds were found sufficient to support section 12022.6 enhancements. Section 12022.6 applies to the amount of what was taken, not the amount of the victim's ultimate net loss. There was substantial evidence at trial that the watches taken in the robbery had cost Joe Escobar Diamonds $96,000, which obviously exceeds the $65,000 threshold set forth in section 12022.6, subdivision (a)(1). The trial court did not err in imposing the one-year section 12022.6 enhancement term.

## C. Fines

Defendant contends, and the Attorney General concedes, that the restitution fine and the parole revocation fine must be reduced to $5,000 each. "[A] defendant should not be required to risk being given greater punishment on a retrial for the privilege of exercising his right to appeal." (*People v. Ali* (1967) 66 Cal.2d 277, 281; see also *People v. Hanson* (2000) 23 Cal.4th 355.) We will modify the judgment accordingly.

### III. Disposition

The judgment is modified to reduce the restitution fine and the parole revocation fine to $5,000 each. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. The restitution order is affirmed.

_____

Mihara, J.

WE CONCUR:


_____

Elia, Acting P. J.


_____

Bamattre-Manoukian, J.


People v. Perez
H041838