[No. C023977. Third Dist. May 6, 1997.]

SACRAMENTO MUNICIPAL UTILITY DISTRICT, Plaintiff and Respondent, v.
COUNTY OF SOLANO et al., Defendants and Appellants.

**COUNSEL**

Dennis Bunting, County Counsel, and Vicki Sieber-Benson, Assistant County Counsel, for Defendants and Appellants.

Kronick, Moskovitz, Tiedemann & Girard, James E. Thompson, William T. Chisum and Deborah M. Cooke for Plaintiff and Respondent.

OPINION

PUGLIA, P. J.—Revenue and Taxation Code section 7284 (section 7284) authorizes the board of supervisors of any county to "license, for revenue and regulation, and fix the license tax upon, every kind of lawful business transacted in the unincorporated area of the county . . . ." In this appeal we conclude that the performance of a governmental function by a public agency does not constitute the transaction of business within the meaning of section 7284 so as to authorize the licensing and taxation of that activity.

I

Sacramento Municipal Utility District (SMUD) is established under the Municipal Utility District Act (Pub. Util. Code, § 11501 et seq.) to provide utility services within a district which includes all of Sacramento County and adjacent portions of Placer County. Under the Municipal Utility District Act, SMUD is authorized to "acquire, construct, own, operate, control, or use, within or without, or partly within or partly without, the district, works or parts of works for supplying the inhabitants of the district and public agencies therein, or some of them, with light, water, power, heat, transportation, telephone service, or other means of communication, or means for the collection, treatment, or disposition of garbage, sewage, or refuse matter . . . ." (Pub. Util. Code, § 12801.) Pursuant to this authority, SMUD owns and operates a five-megawatt wind-driven power generation plant in Solano County (the Solano Wind Plant Project) which it uses to generate electrical power for distribution to customers within its district.

On October 25, 1994, defendant Solano County (County) adopted Ordinance No. 1496 which, among other things, imposes a business license tax on "[e]lectrical energy produced by commercial wind turbine generators" within the County. Between January 1 and March 31, 1995, the Solano Wind Plant Project produced approximately 1,340,000 kilowatt hours of electrical power. On April 3, 1995, defendant John Taylor, acting within the scope of his authority as Director of the Solano County Department of Environmental Management, notified SMUD of its obligation under Ordinance No. 1496 to file monthly reports of electrical energy production within the County. After SMUD submitted the requested reports, defendant Virginia Ryan, the Solano County Tax Collector, assessed a tax on SMUD pursuant to Ordinance No. 1496 of $40.20 for the first quarter of 1995.

On September 26, 1995, SMUD petitioned for extraordinary relief against the County, John Taylor and Virginia Ryan (defendants), seeking to bar

enforcement of Ordinance No. 1496 against SMUD.[1] Following a contested hearing, the superior court entered judgment granting SMUD relief, concluding SMUD is not engaged in "business" in the County within the meaning of section 7284. Defendants appeal.

## II

The County is a political subdivision of the state, exercising only those powers granted by the state and holding its property as agent of the state. (*County of Marin* v. *Superior Court* (1960) 53 Cal.2d 633, 638-639 [2 Cal.Rptr. 758, 349 P.2d 526].) SMUD also is a political subdivision of the state. "SMUD's activities in providing the utilities of light, heat, and power are governmental, or at least quasi-governmental functions. [Citations.]" (*Sacramento Mun. Utility Dist.* v. *County of Sonoma* (1991) 235 Cal.App.3d 726, 733 [1 Cal.Rptr.2d 99].)

Local governments have no inherent taxing power; they have only such power as granted by the state Constitution or the Legislature. (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 247-248 [45 Cal.Rptr.2d 207, 902 P.2d 225].) Defendants contend the authority for Ordinance No. 1496, and in particular, its application to SMUD, derive from section 7284. They argue that the Legislature's use of broad language, "every kind of lawful business," evinces an intent to include governmental functions performed by public entities.

In matters of statutory construction, our primary task is to determine legislative intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) Such intent is normally apparent from the language of the enactment alone. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) However, "[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]" (45 Cal.3d at p. 735)

As support for a broad reading of section 7284, defendants cite *Curran* v. *Mount Diablo Council of the Boy Scouts* (1983) 147 Cal.App.3d

---

[1]SMUD styles its petition as one for writ of *mandate* and seeks an order *commanding* defendants "to perform their duties" under Ordinance No. 1496 "without further attempting to require . . . SMUD" to file reports or "attempting to collect taxes thereon from . . . SMUD." It is clear the remedy SMUD seeks is a writ of *prohibition* to enjoin defendants from enforcing Ordinance No. 1496 against SMUD. Accordingly, we shall treat the underlying proceeding as one for prohibition rather than mandate. (See *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 850 [92 Cal.Rptr. 179, 479 P.2d 379].)

712 [195 Cal.Rptr. 325, 38 A.L.R.4th 607] (*Curran*). In *Curran*, the Court of Appeal concluded the Boy Scouts are subject to the Unruh Civil Rights Act (147 Cal.App.3d at p. 733), by virtue of its prohibition of discrimination "in all business establishments of every kind whatsoever." (Civ. Code, § 51.) The *Curran* court relied in part on *Marin Municipal Water Dist.* v. *Chenu* (1922) 188 Cal. 734 [207 P. 251], in which the Supreme Court explained the word "business" has both a broad and a narrow meaning: "The general definition of the word is 'that which busies, or engages time, attention, or labor, as a principal serious concern or interest,' but the word has a narrower meaning applicable to occupation or employment for livelihood or gain, and to mercantile or commercial enterprises or transactions." (188 Cal. at p. 738.) The *Curran* court concluded the language of the Unruh Civil Rights Act demonstrates a Legislative intent to use the broader meaning of "business." (*Curran, supra,* 147 Cal.App.3d at p. 728.)

*Curran* is inapposite. The issue in *Curran* was whether nonprofit entities are "business establishments" subject to the Unruh Civil Rights Act, whereas the issue here is whether the operations of a public entity constitute "business" within the meaning of section 7284 and are thus subject to licensing and taxation.

It is a well-settled rule of statutory construction that absent express language to the contrary, governmental entities are excluded from the operation of general statutory provisions which implicate the exercise of sovereign powers. (*Churchill* v. *Parnell* (1985) 170 Cal.App.3d 1094, 1097-1098 [216 Cal.Rptr. 876]; *Siegel* v. *City of Oakland* (1978) 79 Cal.App.3d 351, 357 [145 Cal.Rptr. 62].) For example, in *Estate of Miller* (1936) 5 Cal.2d 588 [55 P.2d 491], it was alleged the county violated state law regarding the practice of law by a corporation when the county counsel rendered services to the public administrator in connection with an estate matter. The Supreme Court rejected this contention, explaining: "Strictly speaking, a county is not a corporation at all. It is a legal subdivision of the state, charged with governmental powers. . . . Even if it be held that a county is a quasi corporation . . . , it is well settled that in the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute. . . . The prohibition against a corporation practicing law for these reasons does not apply to a county." (5 Cal.2d at p. 597, italics and citations omitted.)

A particular application of the foregoing rule of construction precludes one arm of state government from taxing another arm absent express authorization. In *Marin Municipal Water Dist.* v. *Chenu, supra,* 188 Cal. 734, a

local water district sought a writ of mandate to compel the Division of Motor Vehicles of the State Department of Finance to issue license plates for vehicles owned by the district without requiring the district to pay a license fee. State law required registration of motor vehicles upon payment of the appropriate fee but exempted vehicles not used for " 'conveyance of persons for hire, pleasure, or business, nor for the transportation of freight.' " (188 Cal. at p. 737.) Applying the "well-established rule that words in a statute providing for the payment of fees or imposing burdens on property shall not be deemed to apply to public agencies or public property, unless such intent is clearly expressed" (188 Cal. at p. 736), the court concluded the reference to "business" in the legislation could not be construed to include the operations of public entities such as the water district. The court explained: "The municipal water district is not a commercial corporation. It does not operate for profit. It is not intended that it shall earn any money in excess of the necessary operating expenses of the plant devoted to the public use and for the acquisition of property necessary thereto. While the operations of such a public corporation are sometimes referred to as its 'business,' it is nevertheless true that the context indicates that the word was used in a narrower meaning in this section." (188 Cal. at pp. 737-738.)

In *Sacramento Mun. Utility Dist.* v. *County of Sonoma, supra,* 235 Cal.App.3d 726, the Court of Appeal concluded a county tax on the generation of electricity by SMUD from geothermal steam violates the state constitutional exemption of public entities from property tax.[2] (235 Cal.App.3d at p. 737.) The court explained the reasoning behind the exemption as follows: "[W]hen a municipal corporation or public agency of the state owns real property used for the purposes of such agency, the ultimate title is in the state itself. '[T]o countenance taxation of such property would be to countenance the folly of the sovereign taxing its own property "and taking money out of one pocket to put in another." ' [Citations.]" (235 Cal.App.3d at p. 732.) The court went on to explain a tax on the generation of electricity using geothermal steam is, for all intents and purposes, an impermissible tax on the property itself. (235 Cal.App.3d at pp. 733-734.)

SMUD does not contend the tax imposed by Ordinance No. 1496 is the functional equivalent of a prohibited property tax. Nor is there anything in

---

[2]Article XIII, section 3, subdivision (b) of the California Constitution exempts from taxation property owned by local governments. Excluded from this tax exemption is property owned by a local government outside its boundaries which: (1) if located in Inyo or Mono Counties, was assessed as of the 1966 or 1967 lien dates respectively and each lien date thereafter until acquired by the local government; or (2) if located outside Inyo or Mono Counties, was taxable at the time it was acquired by the local government. (Cal. Const., art. XIII, § 11, subd. (a).)

the record to suggest this is the case. Therefore, a tax on SMUD's wind generating activities in the County is not constitutionally prohibited. Nevertheless, consistent with established principles of statutory construction, in order for the tax to be applicable to the governmental functions of public entities, such intent must be clearly stated. In our view, the language of section 7284 does not meet this test.

A statute encompassing "every kind of lawful business transacted," though broadly stated, is nevertheless limited by the term "business." As previously explained, the Supreme Court in *Marin Municipal Water Dist.* v. *Chenu, supra*, 188 Cal. 734, narrowly defined the term "business" as used in a statute exempting from a registration requirement vehicles not used "for the conveyance of persons for hire, pleasure, or business, nor for the transportation of freight." This definition encompasses "the ordinary occupations engaged in by private persons or private corporations, either for business or pleasure, and so far as it refers to business it would include private business and not public business." (188 Cal. at p. 738.)

Although the term "business," when used in legislation, is not necessarily limited to activities engaged in for profit (see *Market St. Ry. Co.* v. *Cal. St. Bd. Equal.* (1955) 137 Cal.App.2d 87, 95 [290 P.2d 20]), it is nevertheless confined to activities engaged in by private entities, unless a contrary intent is apparent from the statutory language. (See, e.g., *L. A. etc. Sch. Dist.* v. *St. Bd. Equalization* (1945) 71 Cal.App.2d 486 [163 P.2d 45].) The language of section 7284 does not manifest a contrary intent.

Defendants contend an interpretation of section 7284 which excludes governmental activities is contrary to public policy, as it results in a windfall to SMUD's customers at the expense of County residents. Defendants reason that purchasers of electricity from public utilities which contract to obtain power from privately owned wind generators in the County may have to pay a higher price than SMUD customers if SMUD is exempted from Ordinance No. 1496. According to defendants, the County will be deprived of a source of income solely because of the fortuity that some wind generators in the County are owned by public rather than private entities.

Defendants' contentions implicate policy considerations within the province of the Legislature. (*People* v. *Sipe* (1995) 36 Cal.App.4th 468, 483 [42

Cal.Rptr.2d 266].) Our task begins and ends with a determination of the legislative intent underlying section 7284.[3]

The judgment is affirmed.

Scotland, J., and Raye, J., concurred.

---

[3]Having concluded section 7284 does not authorize taxation of governmental functions performed by public entities, we need not consider SMUD's alternate contention that the plain language of Ordinance No. 1496, which imposes a tax on electrical energy produced by "commercial" wind turbine generators, excludes governmental activities.