John LONBERG

v.

**CITY OF RIVERSIDE**

**No. ED CV 97–237 RT.**

United States District Court,
C.D. California,
Eastern Division.

Jan. 29, 2004.

---

erside (the "City")'s motions (the "Motions") for partial summary judgment pursuant to Fed.R.Civ.P. 56 ("Rule 56"), Plaintiff John Lonberg ("Plaintiff")'s oppositions, and the City's replies.

The City filed two motions. One motion is for partial summary judgment on the issue whether Plaintiff is entitled as a matter of law to multiple statutory damages under California Civil Code, Section 54.3 ("Section 54.3") based on a single course of allegedly discriminatory conduct. The second motion is for partial summary judgment on the question whether Plaintiff is entitled as a matter of law to an award of damages against City under the Second Claim of the Complaint for violations of Civil Code, Section 54, *et seq.*, since the California Tort Claims Act ("CTCA") provides City immunity from claims for damages and because Plaintiff cannot establish intentional conduct in violation of Section 54.3. The Court concludes as follows:

## I.

## BACKGROUND

Plaintiff filed a complaint in this court alleging City violated Title II of the Americans With Disabilities Act [42 U.S.C. § 12101 et seq.] (the "ADA") and Section 54.3. The gist of the complaint is that the City has failed to provide wheelchair accessible curb ramps ("curb cuts") on city controlled property to the extent necessary to satisfy federal and state law. Plaintiff alleges that this conduct constitutes a violation of Section 54.3.

## II.

## UNCONTROVERTED MATERIAL FACTS [1]

Neither the City nor Plaintiff has provided the court with any material facts

Terence J. Kilpatrick, San Diego, CA, Page Wellcome, Cardiff–by–the–Sea, Rick R. Rothman, Heather C. Beatty, McCutchen, Doyle, Brown & Enerson, LLP, Los Angeles, CA, for Plaintiff.

Gregory F. Hurley, Michael J. Mills, Paul F. Donsbach, Kutak Rock LLP, Newport Beach, CA, for Defendant.

PROCEEDINGS: ORDER DENYING DEFENDANT CITY OF RIVERSIDE'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered defendant City of Riv-

---

1. The court notes that the City has made

evidentiary objections to the Declaration of

supported by admissible evidence which create genuine issues of material fact.[2]

# III.

## *ANALYSIS*

Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

■■■■ In contrast, Fed.R.Civ.P. 12(c) ("Rule 12(c)") governs motions for judgment on the pleadings. A Rule 12(c) motion is functionally identical to a motion pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Judgment on the pleadings is appropriate if, assuming all facts in the complaint to be true, the moving party is entitled to judgment as a matter of law. *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989). As with Rule 12(b)(6) motions, in addition to assuming the truth of the facts pled, the court must construe all reasonable inferences drawn from these facts in the plaintiff's favor. *See Gen. Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989). Finally, although Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend, *see Carmen v. San Francisco Unified Sch. Dist.,* 982 F.Supp. 1396, 1401 (N.D.Cal.1997), and to simply grant dismissal of the action instead of entry of judgment. *See Moran v. Peralta Cmty. Coll. Dist.,* 825 F.Supp. 891, 893 (N.D.Cal. 1993).

■■■■ Because the City's motions assert contentions relating solely to the sufficiency of the allegations in the complaint, and because no evidence relevant to these contentions has been submitted to the court, the court construes these motions as motions for judgment on the pleadings pursuant to Rule 12(c).

The City contends, as a matter of first impression, that judgment is appropriate on Plaintiff's claim for violation of Section 54.3 because Section 54.3 does not provide liability for public entities.[3] In the alter-

---

Terry Kilpatrick. The court need not rule on these objections because nothing in the Declaration of Terry Kilpatrick is probative on the issues to be resolved in this order.

**2.** The City did submit two nearly identical pleadings titled Defendant's Statement of Uncontroverted Facts and Conclusions of Law as to each motion. But, they contained no material facts—merely procedural background and a summary of a few of the allegations contained in Plaintiff's complaint. Furthermore, neither statement is supported by admissible evidence. The only evidence submitted to the court was the declaration of Terry Kilpatrick, attorney for Plaintiff. But as noted, the content of that declaration is immaterial to the issues to be resolved in the Motion. The court further notes that Plaintiff appears to request that the court incorporate all the evidence contained in all the documents previ-

ously filed in this case, but Plaintiff did not identify for the court which facts in these documents are material to the resolution of this Motion. *See Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026 (9th Cir. 2001).

**3.** Section 54.3 states in pertinent part:

"(a) Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Section 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dol-

native, the City contends that if public entities may be held liable for violation of Section 54.3, Plaintiff failed to allege a required element of Section 54.3 claim: intentional conduct. Finally, the City contends that if it may be, and is held liable under Section 54.3, it is liable only for a single statutory damage award not less than $1000 because its conduct constituted a "single course of conduct."

## A. Public Entity Liability For Violations of Section 54.3

In addressing the issue of whether the City can be held liable for a violation of Section 54.3, the parties brief extensively the effect Cal. Govt.Code § 815 ("Section 815") of the CTCA [Cal. Govt. Code § 810 et seq.] has on the claim.[4] As an initial matter, the court notes that Section 815, and the case law interpreting it, is only tangentially relevant to resolving the question whether the City can be held liable for violating Section 54.3. The passage of Section 815 was designed to eliminate public entity liability based upon common law tort claims. *See Williams v. Horvath*, 16 Cal.3d 834, 838, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976); Legislative Committee Comment—Senate to Section 815. Accordingly, Section 815(a) provides that: "[e]xcept as otherwise provided by statute: [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." But Plaintiff does not allege a common law

tort claim, he alleges the violation of a statute—Section 54.3.

So the question is not whether Section 815 shields the City from Section 54.3 liability, because clearly it does not; rather the issue is whether Section 54.3 provides for liability by public entities. Accordingly, the court will turn to the language of Section 54.3.

### 1. *Rules of Statutory Construction*

Because the court is interpreting a California statute, it must follow California rules of statutory interpretation. *See In re Anderson*, 824 F.2d 754, 756 (9th Cir. 1987); *Batterton v. Texas General Land Office*, 783 F.2d 1220, 1222–23 (5th Cir. 1986).

California's general canons of statutory construction do not vary significantly from those applied in this circuit. The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. *See White v. Ultramar, Inc.*, 21 Cal.4th 563, 572, 88 Cal. Rptr.2d 19, 981 P.2d 944 (1999). "The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent." *Id.* (citations omitted). "If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legisla-

---

lars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Section 54, 54.1 and 54.2....

(b) ... The remedies in this section are nonexclusive and are in addition to any other remedy provided by law, including, but not limited to, any action for injunctive or other equitable relief available to the aggrieved party or brought in the name of

the people of this state or of the United States.

(c) A person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act."

4. For example, the parties discuss at length whether the sovereign immunity from suit provided by Section 815 is waivable.

tive history. We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." *People v. Coronado,* 12 Cal.4th 145, 151, 48 Cal.Rptr.2d 77, 906 P.2d 1232 (1995) (citations omitted).

California has adopted a special canon of construction to determine whether statutes creating liability should be applied to public entities: while "in California, all government tort liability must be based on statute...the statute providing for liability need not be part of the Tort Claims Act itself. Nor must the statute provide on its face that it is applicable to public entities. Rather, a liability is deemed 'provided by statute' if a statute defines the tort in general terms." *Lopez v. Southern California Rapid Transit,* 40 Cal.3d 780, 785 n. 2, 221 Cal.Rptr. 840, 710 P.2d 907 (1985) (citations omitted); *see also Nestle v. City of Santa Monica,* 6 Cal.3d 920, 933–937, 101 Cal.Rptr. 568, 496 P.2d 480 (1972); *Levine v. City of Los Angeles,* 68 Cal.App.3d 481, 487, 137 Cal. Rptr. 512 (1977) ("the phrase as 'provided by statute' [in Section 815] is given its broadest possible meaning by our Supreme Court."). The exception to this rule is provided by *People v. Crow,* 6 Cal.4th 952, 26 Cal.Rptr.2d 1, 864 P.2d 80 (1993). A statute should not be interpreted as applying to public entities where such application would infringe upon the public entities' sovereign powers. *See Crow,* 6 Cal.4th at 959 n. 6, 26 Cal.Rptr.2d 1, 864 P.2d 80 ("governmental agencies are generally held subject to legislation that applies to any 'person,' so long as the legislation does not impair the government's sovereign powers."); *Nestle,* 6 Cal.3d at 933, 101 Cal.Rptr. 568, 496 P.2d 480 ("[G]enerally worded code sections are applied to governmental bodies if no impairment of sovereign powers would result.").

## 2. *Application*

Section 54.3 identifies potential violators, stating: "any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Section 54 and 54.1... is liable for each such offense." California Civil Code § 14 in turn, defines the word "person" as "includ[ing] a corporation as well as a natural person."

Plaintiff asserts that Section 54.3 is a statute that defines a wrongful act in general terms, and the court agrees. The City appears to contend that the language of Section 54.3 is not general because it defines possible violators as "person or persons, firm or corporation" and because Civil Code § 14 defines person as including "a corporation as well as a natural person." The City's position is simply not supported by case law, and the court therefore rejects it. *See Regents of University of California v. Superior Court (Regan),* 17 Cal.3d 533, 536, 131 Cal.Rptr. 228, 551 P.2d 844 (1976) (concluding that "person, association, copartnership or corporation" included public entity); *City of Los Angeles v. City of San Fernando,* 14 Cal.3d 199, 276–77, 123 Cal.Rptr. 1, 537 P.2d 1250 (1975), *disapproved on other grounds in City of Barstow v. Mohave Water Agency,* 23 Cal.4th 1244 (2000) (interpreting the language "person, firm or corporation" in Civil Code § 1007 to include governmental agencies); *Flournoy v. State,* 57 Cal.2d 497, 498–99, 20 Cal.Rptr. 627, 370 P.2d 331 (1962) (applying to a state government a wrongful death statute attaching liability to any "person" responsible for another's death); *Gomes v. County of Mendocino,* 37 Cal.App.4th 977, 44 Cal.Rptr.2d 93 (1995) (concluding that a statute covering "a person, firm, corporation, partnership or association" included federal government). *see also In Fair Political Practices Comm'n v. Suitt,* 90 Cal.

App.3d 125, 153 Cal.Rptr. 311 (1979) (citing *City of Los Angeles* and *Regents of University of California, supra* and concluding that the principle of these cases is not inapplicable because the term "person" is defined where the definition leaves open the possibility that the public entity is a person).

This court must also reject the City's contention that application of Section 54.3 to it would interfere with the exercise of its sovereign powers. The City does not explain how application of Section 54.3 would do so or even begin to address the source and extent of its sovereign powers. Regardless, the ADA requires the City to make its streets accessible to the disabled. Section 54.3 merely creates a monetary damage remedy for a violation of its provisions. It is not apparent to the court how application of this remedy infringes the City's sovereign powers. If the City contends that all damage statutes infringe upon a public entity's sovereign powers, it has not provided any case law supporting this proposition or suggested a rationale which would support such a rule.[5]

Because application of Section 54.3 to the City does not infringe upon its sovereign powers, and because Section 54.3 is a general statute, California rules of statutory construction would seem to dictate that it be applied to the City.

Nothing in the legislative record of Section 54.3 indicates that the California Legislature intended to exclude public entities as potential violators. If anything, the record suggests that the statute was to have the broadest possible applicability. *See generally,* Legislative Counsel's Digest at p. 1 (April 3, 1968) ("[Section 54 et al.] Declares state policy to encourage and enable blind persons and other physically disabled persons to participate fully in the social and economic life of the state and to engage in remunerative employment and policy that public employment and all employment supported by public funds be granted to blind and other physically disabled person on same basis as to the able-bodied.")

The City's citations to *Gates v. Superior Court,* 32 Cal.App.4th 481, 510, 38 Cal. Rptr.2d 489 (1995) and the Legislative Committee Comment to Section 815 ("Committee Comment"), imply that the City contends that Section 815 creates a special canon of statutory construction to the effect that: public entities are not liable under a statute unless the statute clearly and unambiguously provides for such liability. If the City so contends, the City misinterprets the CTCA.

The "presumed non-liability" rule cited by the City applies only where the public entity asserts immunity under a specific immunity provided by the CTCA, *e.g.* Cal. Gov't Code § 815.2(b).[6]

The City refers to the following language in the Committee Comment in sup-

---

5. The cases cited by the City are inapposite. *See Sacramento Mun. Util. Dist. v. County of Solano,* 54 Cal.App.4th 1163, 1167, 63 Cal. Rptr.2d 286 (1997) (holding county could not tax municipal utility as it is not "business" for purpose of license tax provision of Cal. Revenue and Taxation Code § 7284); *Div. of Labor Law Enforcement v. El Camino Hosp. Dist.,* 87 Cal.Rptr. 476, 8 Cal.App.3d Supp. 30, 34 (1970) (concluding that the "term other municipal corporation, as used in Labor Code section 220, means public corporations or quasi-municipal corporations, and that defen-

dant hospital district is included within the meaning of that term.").

6. As Plaintiff notes, under the City's proposed rule, the general immunity from common law tort suits provided by Section 815 would override all general statutes imposing liability absent an express legislative declaration imposing liability upon public entities. Such a rule clearly would be inconsistent with the California Supreme Court holding cited above that liability of public entities is provided by statute if defined in general terms.

port of its position: "the immunity provisions will as a general rule prevail over all sections imposing liability." But, the Committee Comment is referring to the specific immunities provided throughout the CTCA and not the general sovereign immunity reinstated by Section 815 to overturn *Muskopf v. Corning Hospital District,* 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961). This is apparent from the language of the Committee Comment directly preceding the portion cited by the City. *See* Committee Comment ("In the following portions of this division, there are many sections granting public entities and public employees broad immunities from liability... On the other hand, under subdivision (b) of this section, the immunity provisions will as a general rule prevail over all sections imposing liability.").

Similarly, the City mentions the language of the Court of Appeals in *Gates* where the court wrote "the general rule is that the governmental immunity will override a liability created by a statute outside of the Tort Claims Act." *See Gates,* 32 Cal.App.4th at 510, 38 Cal.Rptr.2d 489. But again, the court of appeals in *Gates* was addressing a specific immunity, that was provided by Section 845 of the CTCA. Had the City claimed that it was immune from suit under Section 54.3 and pointed to a specific CTCA immunity provision, then the general rule would be no liability. But as it has not, the "presumed non-liability" rule does not apply.[7]

In light of the foregoing discussion the court concludes that Section 54.3 encompasses liability by public entities, including City.

## B. INTENT TO DISCRIMINATE

City contends that summary judgment on Plaintiff's Section 54.3 claim is appro-

priate because Plaintiff failed to allege in the second claim of the complaint an intent to discriminate on the part of City. Plaintiff contends that intent to discriminate is not an element of a Section 54.3 claim.

 Courts addressing this issue have concluded that proof of discriminatory intent need not be proven to establish a violation of Section 54.3. *See Donald v. Cafe Royale, Inc.,* 218 Cal.App.3d 168, 176–180, 266 Cal.Rptr. 804 (1990); *Hankins v. El Torito Restaurants, Inc.,* 63 Cal.App.4th 510, 520 n. 4, 74 Cal.Rptr.2d 684 (1998) ("In contrast to the Unruh Civil Rights Act, a violation of section 54.1(a) does not require intent.") (citing *Donald* ); *Boemio v. Love's Restaurant,* 954 F.Supp. 204, 207–08 (S.D.Cal.1997) (citing *Donald* ); *Arnold v. United Artists Theatre Circuit, Inc.,* 866 F.Supp. 433, 438 (N.D.Cal.1994) (citing *Donald* for this proposition in dicta) *See also* Terry B. Friedman et al., California Practice Guide: Landlord Tenant § 2:563.3 (1998). The existence of a directly on-point court of appeals decision generally ends the court's analysis. *See Nelson v. City of Irvine,* 143 F.3d 1196, 1206–07 (9th Cir.1998) (noting that "where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts").

City contends, however that *Donald* was implicitly overruled by the California Supreme Court in *Harris v. Capital Growth Investors XIV,* 52 Cal.3d 1142, 278 Cal. Rptr. 614, 805 P.2d 873 (1991).

The issue before the California Supreme Court in *Harris* was whether a violation of Cal. Civ.Code § 52 ("Section 52") could be proved using disparate impact methodolo-

---

**7.** The court notes that if the City's position were correct, the court in *Gates* would not have needed to address Section 845 immunity because Section 815 would have provided sufficient immunity.

gy. The Court, using a three-part analysis, concluded that disparate impact was not a theory available under Section 52. *Harris*, 52 Cal.3d at 1172–73, 278 Cal.Rptr. 614, 805 P.2d 873. First, the court noted that nothing in the history or language of Section 52 suggested that the legislature intended that a disparate impact test be applied and also noted that Section 52 was enacted before the disparate impact theory was recognized. *See id.* at 1172, 278 Cal. Rptr. 614, 805 P.2d 873.

Second, the court analyzed the language of Section 52, which provides:

Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 or 51.5, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the right provided in Section 51 or 51.5.

The court reasoned that "the references to 'aiding' and 'inciting' denial of access to public accommodations, to making discriminations and restrictions, and to the commission of an 'offense' imply willful, affirmative misconduct on the part of those who violate the Act." *Harris*, 52 Cal.3d at 1172, 278 Cal.Rptr. 614, 805 P.2d 873. Furthermore, the Court concluded that the damages provision of Section 52 allowing for an exemplary damages award equivalent to treble the actual damages suffered and a stated minimum amount reveals a legislative desire to punish intentional and morally offensive conduct. The Supreme Court of California concluded that the language of the statute as a whole indicated legislative intent that Section 52(a) liability is limited to intentional acts of discrimination.

Third, the court noted that California Civil Code, Section 51 ("Section 51") explicitly exempts standards that are "applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or blindness or other physical disability." Cal. Civ.Code § 51. The court reasoned that this language is inconsistent with a disparate impact claim "because an adverse impact claim challenges a standard that is applicable alike to all such persons based on the premise that, notwithstanding its universal applicability, its actual impact demands scrutiny." *Harris*, 52 Cal.3d at 1172–73, 278 Cal.Rptr. 614, 805 P.2d 873.

Only one part of the California Supreme Court's three-part analysis in *Harris* applies to the issue to be resolved by this court. Like Section 52, Section 54.3 provides for treble damages and minimum statutory damages. As the court in *Harris* notes, damage provisions which allow for minimum statutory damages and treble damages like those of Section 52 and Section 54.3 are generally designed to punish intentional conduct. Similarly, Section 54.3 contains the term "offense," which the California Supreme Court concluded was suggestive of intentional conduct. However, unlike Section 52, Section 54.3 does not contain the "aids or incites" or "makes any discrimination" language that the Supreme Court in *Harris* suggested was indicative of a legislative intent that Section 52 apply solely to intentional conduct. It is unclear whether the California Supreme Court would have reached the same conclusion respecting the proper interpretation of Section 52 if those words were absent.

This court has carefully read and considered the opinion of the California Supreme Court in *Harris*. In light of the similarities in language between Sections 52 and

54.3, the City's contention that *Harris* signals a departure from *Donald* is arguable. However, in light of the differences in the language of the two statutes and the fact that *Donald* specifically addresses the issue before the court while the court in *Harris* addressed the related but not identical issue of the availability of a disparate impact theory to prove a violation of Section 52, the court concludes that the City has not presented a compelling argument that the California Supreme Court implicitly overruled *Donald* with its analysis in *Harris*.[8]

## C. MULTIPLE STATUTORY DAMAGES

The City contends that Plaintiff may not recover "multiple statutory damages awards" for a single course of conduct. The court need not reach this issue, however, because no facts or allegations respecting the City's "course of conduct" have been identified by the City. Without allegations to the effect that the City's actions constitute a "single course of conduct," adjudication pursuant to Rule 12(c) of the issue of whether multiple statutory damage awards are permitted would amount to an improper advisory opinion. Similarly, as noted above, the City has submitted no evidence of its course of conduct and therefore adjudication pursuant to Rule 56 is also inappropriate.

## IV.

### DISPOSITION

ACCORDINGLY, IT IS ORDERED THAT: the City's two motions for partial summary judgments, construed as motions for judgment on the pleadings, are DENIED.

---

**8.** The court notes that the California Supreme Court expressly limited its holding in *Harris* to Section 52. *Harris*, 52 Cal.3d at 1175, 278 Cal.Rptr. 614, 805 P.2d 873 ("In addition, we express no view as to whether a disparate or adverse impact test applies to housing, employment, or other discrimination claims under the FEHA or any other provision of law.")