Filed 4/14/23  P. v. Sayedi CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. SAYED NAJI SAYEDI, Defendant and Appellant. | A164283 (Contra Costa County Super. Ct. No. 41962927) |

Defendant Sayed Naji Sayedi appeals the trial court's order for victim restitution.  Sayedi pled no contest to driving with a blood alcohol content of .08 percent and causing bodily injury.  (Veh. Code, § 23153, subd. (b).)[1]  He stipulated to a sentence of two years in state prison and agreed that the conviction would require him to pay victim restitution.  The trial court ordered Sayedi to pay $196,887.35 plus interest in medical expenses and lost wages incurred by the victim as a result of a severe ankle injury sustained in the incident.  As part of the plea agreement, however, the court had dismissed the remaining counts against Sayedi, including three counts that referred to the infliction of "great bodily injury."  Sayedi contends that the ankle injury, given its severity, was the basis for these dismissed charges,

_____

[1]  All further statutory references are to the Vehicle Code unless otherwise specified.

and that the trial court's order therefore violates the rule that restitution cannot be awarded in non-probation cases for losses stemming from criminal conduct of which the defendant was not convicted. In the alternative, Sayedi argues that there is insufficient evidence that the victim's ankle injury was caused by his drunk driving. We disagree and affirm.

## BACKGROUND

Our summary of the facts is based on the probation report, which incorporated portions of the police report that was made following the incident in June 2018.[2]

Sayedi entered a 7-Eleven to buy alcohol. The store manager, seeing that Sayedi was already intoxicated, refused to sell it to him and asked him to leave. Sayedi refused, and began kicking doors and harassing customers. At this point, the victim, Kem Goodwin, gave Sayedi a cigarette and told him to go home. Sayedi became upset and the two started fighting. The manager did not see who swung first, but saw Goodwin on the ground. Sayedi then got into his truck and started the engine. While Goodwin was approaching the driver's side of the truck, Sayedi put the truck in reverse, struck Goodwin, and drove away. When the police arrived, Goodwin was found lying on his back in the store's parking lot. He had a cut above his eyebrow, swelling to his nose and lips, and an open fracture on his left ankle. Goodwin told the police that he had been involved in a physical altercation with Sayedi and that after the altercation, Sayedi struck him with his truck.

Sayedi was initially charged with four counts: (1) assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1) with a special allegation that he personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a));

---

[2] There was no preliminary hearing because Sayedi entered into a plea agreement.

(2) driving under the influence of alcohol causing great bodily injury within 10 years of two other DUI offenses (§§ 23153, subd. (a), 23566, subd. (b)); (3) driving with a blood alcohol content of .08 percent causing great bodily injury within 10 years of two other DUI offenses (§§ 23153, sub. (b), 23566, subd. (b)); and (4) leaving the scene of an accident (§ 20001, subd. (a)).

The prosecution later amended the complaint to add a fifth count—a charge of driving with a blood alcohol content of .08 percent causing bodily injury (§ 23153, subd. (b)).  On the same day, Sayedi pled no contest to count five and the prosecution agreed to dismiss the remaining counts and enhancements.   Pursuant to the terms of the plea agreement, the trial court sentenced Sayedi to two years in state prison.  Victim restitution was reserved at the prosecution's request.

Following a later evidentiary hearing, the trial court ordered that Sayedi pay Goodwin restitution in the amount of $196,887.35 plus interest for medical expenses and lost wages resulting from the ankle injury.  Sayedi now appeals.

DISCUSSION

### 1. *Standard of Review*

A trial court's restitution order is generally reviewed for abuse of discretion.  (*People v. Fortune* (2005) 129 Cal.App.4th 790, 794.)  "An abuse of discretion will not be found if there is a factual or rational basis for the amount of restitution ordered." (*Ibid*.)  Moreover, "the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.  [Citation.]  'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.)

However, when a challenge is made to the legal basis for the restitution award, as opposed to the trial court's determination of predominantly factual matters, we review the restitution order de novo "in light of the applicable statutes and any relevant decisional law." (*People v. Brunette* (2011) 194 Cal.App.4th 268, 277.)

### 2. *The Trial Court Did Not Err in Ordering Restitution for Losses Sustained as a Result of Defendant's Drunk Driving*

The California Constitution guarantees that "all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) To that end, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (Pen. Code, § 1202.4, subd. (f).) "Courts have interpreted section 1202.4 as limiting restitution awards to those losses arising out of the criminal activity that formed the basis of the conviction." (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1049.)[3]

_____

[3] This restriction applies only in cases in which the court imposes judgment and the defendant is sentenced to a period of incarceration. When a defendant is instead placed on probation, restitution may be ordered to compensate losses beyond those directly caused by the criminal conduct underlying the conviction, as long as it is reasonably related to the crime of which the defendant was convicted or to future criminality. (*People v. Walker* (2014) 231 Cal.App.4th 1270, 1274 (*Walker*).) "This greater latitude to impose restitution arises from the purpose of probation to foster rehabilitation [citation] as well as from the defendant's consensual decision to forgo imprisonment in favor of probation and its potentially more onerous conditions." (*Ibid.*)

Sayedi does not challenge the calculation of the restitution amount, but contends that Goodwin is not entitled to any restitution for the losses related to his ankle injury. He reasons as follows. Sayedi pled no contest to driving with a blood alcohol content of .08 percent causing "bodily injury" to another person (§ 23153, subd. (b)), while the three counts referring to the infliction of "great bodily injury" were dismissed. Because Goodwin's severe ankle injury constitutes "great bodily injury," Sayedi argues, the "bodily injury" underlying the offense of which he was convicted must have been something else—perhaps "the facial injuries mentioned in the probation report or the general pain and discomfort of being struck by a truck"—although ultimately it "does not matter" what the predicate injury was, because it could not have been the ankle injury. Because Sayedi did not make a *Harvey*[4] waiver, which expressly allows the imposition of sentencing consequences based on facts pertaining solely to the dismissed counts, he concludes that he cannot be ordered to pay restitution for the losses Goodwin suffered from his ankle injury.[5]

We are not persuaded by this reasoning. While we agree that Goodwin's ankle injury was severe enough to support a conviction for great bodily injury (see *People v. Quinonez* (2020) 46 Cal.App.5th 457, 464–465), it does not follow that the injury underlying the charge of which Sayedi was convicted must have been something else. While not every bodily injury qualifies as "great" bodily injury, the reverse is not true: every great bodily injury is a bodily injury. Goodwin's ankle injury supports the charge of which Sayedi was convicted, regardless of how severe the injury was.

---

[4] *People v. Harvey* (1979) 25 Cal.3d 754, 758.

[5] We will consider this arguably forfeited issue on appeal since it was adequately raised below in Sadeyi's briefing and at oral argument during the restitution hearing.

The dismissed charges are sentencing enhancements. Counts two and three were also for driving under the influence in violation of section 23153—subdivisions (a) and (b) respectively—but they were enhanced by subdivision (b) of section 23566, which specifies the penal consequences when a person convicted of violating section 23153 caused great bodily injury and has two or more prior convictions for driving under the influence within 10 years. Count one, for assault with a deadly weapon, was enhanced by Penal Code section 12022.7, which provides that "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (Pen. Code, § 12022.7, subd. (a).) The enhancement aims "to punish more severely those crimes that actually result in great bodily injury" or "exceed[s] the level of injury required under [] section 23153." (*People v. Guzman* (2000) 77 Cal.App.4th 761, 765.)

The dismissal of these charges does not absolve Sayedi of restitutionary responsibility for the injuries his criminal conduct caused. For example, in *Walker, supra*, 231 Cal.App.4th 1270, the defendant pled no contest to four counts of " 'DUI causing injury' " under section 23153, subdivision (a), and admitted the special allegation of causing injury to four named victims under section 23558.[6] (*Id.* at p. 1273.) The trial court ordered the defendant to pay restitution to two of the named victims as well as two other victims who were *not* named in the charging document. (*Ibid.*) The defendant

---

[6] Section 23558 is a sentencing enhancement providing that "[a] person who proximately causes bodily injury or death to more than one victim in any one instance of driving in violation of Section 23153 . . . shall, upon a felony conviction . . . receive an enhancement of one year in the state prison for each additional injured victim."

appealed, arguing that the trial court exceeded its authority "by imposing restitution for crimes of which he was not convicted" (*id.* at pp. 1274–1275), because section 23558 requires that the victims be named in the charging document (*id.* at p. 1276).

The appellate court rejected this argument.  It noted that the crime of DUI causing injury has three elements: " '(1) driving a vehicle while under the influence of an alcoholic beverage [or drug]; (2) when so driving, committing some act which violates the law or fails to perform some duty required by law; and (3) as a proximate result of such violation of law or failure to perform a duty, another person was injured.' " (*Walker, supra*, 213 Cal.App.4th at p. 1275.)  The first two elements describe the *conduct* prohibited by the statute, whereas the third element describes the required *consequence* of that conduct; only the first two elements are part of the "actus reus" of the offense.  (*Id.*)  The court explained that section 23558 is a penalty provision that "does not alter the definition of the underlying crime it enhances." (*Id.* at p. 1276.)  And because the enhancement "deals with the *result* of a defendant's conduct, not the *conduct itself*," the court concluded it was irrelevant that two of the victims had not been named in the charging document; "the [trial] court's power to impose restitution turns on the relationship between the loss and the defendant's criminal conduct." (*Ibid.*)

We think the same reasoning applies here.  As a result of being struck by Sayedi's truck, Goodwin suffered a severe ankle fracture that required two surgeries and over a year of recuperation.  The dismissal of the counts related to the infliction of great bodily injury does not negate or diminish the economic losses sustained by Goodwin as a result of the conduct underlying Sayedi's conviction, which was driving under the influence, nor does it limit the court's power to order restitution for those losses.

Sayedi's reliance on *Crump v. Appellate Division of Superior Court* (2019) 37 Cal.App.5th 222 is misplaced. There, the defendant, a natural gas company, was charged with three counts of failure to report a gas leak at its storage facility and one count of discharge of air contaminants. (*Id.* at p. 231.) The defendant entered into a plea agreement in which it pled no contest to one count of failure to timely report the gas leak, with the remaining counts against it dismissed. (*Id.* at pp. 232–233.) Following the plea, the victims of the gas discharge argued they were entitled to restitution for the failure to timely report conviction because it was "transactionally related" to the dismissed count of discharge of air contaminants. (*Id.* at p. 234.) The appellate division of the trial court concluded that the victims had no right to restitution because they "did not establish 'that any economic losses they sustained resulted from the criminal conduct for which defendant was convicted.'" (*Id.* at p. 235.)

The victims thereafter filed a petition for writ of mandate. The court agreed with the appellate division's holding and denied the victims' petition on this point.[7] (*Crump, supra,* 37 Cal.App.5th at pp. 235–236.) The court was unpersuaded by the argument that the criminal discharge of contaminants was encompassed in the defendant's conviction for a failure to timely report the discharge. (*Id.* at p. 245.) The court distinguished *Walker, supra,* 231 Cal.App.4th 1270 on the grounds that there, the defendant "pleaded no contest to *committing the criminal act*—driving under the influence causing injury—*that caused the economic loss* to the victims." (*Crump, supra,* 37 Cal.App.5th at p. 246.) By contrast, the court held that

_____

[7] The court denied the petition in part and remanded "to permit petitioners to prove damages stemming only from the three-day delay in reporting the leak." (*Crump, supra,* 37 Cal.App.5th at p. 236.)

8

"[a] conviction for a failure-to-report violation is not a conviction for the underlying conduct that was not reported. Any other conclusion is rationally unsustainable." (*Ibid.*)

Again, here, Sayedi pled no contest to committing the criminal act of driving under the influence causing injury—the very act that caused Goodwin's ankle injury and resulting economic losses. That a sentencing enhancement related to great bodily injury was dismissed does not alter or change this underlying conduct, and accordingly Sayedi could properly be ordered to pay restitution for the losses that conduct caused.

### 3. There Was Sufficient Evidence That the Ankle Injury Was Caused by Defendant's Drunk Driving

Sayedi alternatively argues that, even if the losses related to Goodwin's ankle injury fell within the scope of his conviction, there was insufficient evidence to support a conclusion that Sayedi's drunk driving caused it. At the restitution hearing, Goodwin testified that, although he recalled arguing with Sayedi and the two of them hitting each other, he did not recall anything else from that night, including running into the parking lot, getting hit by Sayedi's truck, or giving a statement to the police. Because Goodwin recalled little from that night, Sayedi argues that Goodwin could have injured his ankle stumbling off the curb in the parking lot when he ran after Sayedi, and that the injury was not a result of being hit by Sayedi's truck. We are unpersuaded in light of the evidence in the record and the deferential standard of review applicable to the trial court's factual determinations.

First, the injury to Sayedi's ankle was an open fracture that, in Goodwin's own words, "pushed the bone out on both sides of the leg." It is more plausible that this injury resulted from being struck by Sayedi's truck than from a preceding stumble off a curb. Second, the store manager who witnessed the incident told the police that, after Goodwin was on the ground,

9

he "approached the driver's side of the truck[, Sayedi] put the truck in reverse and turned to the right quickly and struck [Goodwin]." Although the store manager was not called to testify at the restitution hearing, Sayedi's counsel read into the record a portion of the police report that contained the manager's statement.

Finally, the restitution hearing occurred more than three years after the incident, Goodwin sustained a head injury from the altercation and underwent two surgeries for his ankle injury. Understandably, Goodwin's recollection of what happened that night was limited. He testified that he recalled getting into a "scuffle" with Sayedi, everything going black, and then waking up in the hospital after undergoing surgery for his fractured ankle. But Goodwin did not testify that he had any pre-existing ankle injury, or that his ankle was injured during the initial scuffle with Sayedi. On this record, we find that there was sufficient evidence to conclude that Goodwin's ankle injury was caused by Sayedi's drunk driving.

## DISPOSITION

The restitution order is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
WHITMAN, J.*

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10