Filed 12/19/23  P. v. Vargas CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EFRAIN VARGAS,<br><br>    Defendant and Appellant. | F084670<br><br>(Super. Ct. No. 22CMS-0303B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Michael J. Reinhart, Judge.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

A jury convicted appellant Efrain Vargas of sexual penetration by force (Pen. Code,[1] § 289, subd. (a)(1)(A), count 2); false imprisonment (§ 236, count 3); attempted forcible rape (§§ 664, 261, subd. (a)(2), count 4); and resisting a peace officer (§ 148, subd. (a)(1), count 5). The trial court sentenced Vargas to a term of eight years in state prison.

Vargas raises the following claims on appeal. First, the trial court failed to properly instruct the jury on count 4. Second, there is insufficient evidence supporting his conviction on count 4. Third, the trial court erred by failing to hold Vargas and his codefendant jointly and severally liable for direct victim restitution. Acknowledging that trial counsel did not challenge the restitution order below, Vargas contends that trial counsel was constitutionally ineffective on this basis.

Although the parties did not raise this issue, we have identified an error as to the sentence imposed on count 4. We will therefore remand the matter back to the lower court for a full resentencing. (See, *People v. Buycks* (2018) 5 Cal.5th 857, 893.) At the hearing, Vargas can raise his challenge to the direct victim restitution order. The judgment of conviction is otherwise affirmed.

**PROCEDURAL HISTORY**

On March 17, 2022, the Kings County District Attorney filed an amended information charging Vargas with assault with the intent to commit rape (§ 220, subd. (a)(1), count 1); sexual penetration with a foreign object (§ 289, subd. (a)(1)(A), count 2); false imprisonment by violence (§ 236, count 3); attempted forcible rape in concert/rape by foreign object acting in concert (§§ 664/264.1, subd. (a), count 4); and resisting a

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

peace officer (§ 148, subd. (a)(1), count 5). The information jointly charged Vargas's codefendant, Javier Vargas Ramirez, with counts 1, 3, and 4.

On March 24, 2022, Ramirez entered an open plea of no contest to assault with intent to commit rape (§ 220, subd. (a)(1), count 1), false imprisonment by violence (§ 236, count 3), and attempted rape in concert (§§ 664/264.1, count 4).[2]

On April 28, 2022, the jury found Vargas guilty on counts 2, 4, and 5, and found him guilty of false imprisonment without violence on count 3. The trial court sentenced him to a total term of eight years in state prison, and ordered him to pay $1,700 in direct victim restitution.

Vargas filed a timely notice of appeal.

## STATEMENT OF FACTS

Vargas and Ramirez are brothers. Ramirez dated V.R. for approximately five years before their relationship ended in 2016. They share two children together.

On July 3, 2019, Ramirez texted V.R. and invited her to join him at a casino. V.R. initially declined, but Ramirez kept insisting. V.R. agreed to go on the condition that it would be just the two of them.

At approximately 10:00 p.m., Ramirez picked V.R. up from her home. After approximately five or 10 minutes of driving, V.R. noticed that Vargas was laying down in the back seat.

Vargas got up, sat right behind her, and began touching her, roughly. Vargas touched V.R.'s breasts and thighs. He began whispering in V.R.'s ear, telling her that "he liked [her] since [she] had gotten with his brother."

V.R. started crying and screaming, and repeatedly demanded that Ramirez let her drive. Ramirez acted as if he did not hear V.R.; he laughed and continued driving.

---

[2] Ramirez is not a party to this appeal.

Twenty minutes after Ramirez picked V.R. up, he drove into an orchard and parked. Vargas and Ramirez dragged V.R. out of the car and removed her clothes, including her bra and underwear. V.R. screamed for help. Ramirez grabbed her by her face and hit her bottom. He asked Vargas, "isn't this what you have been wanting[?]"

Fearing for her life, V.R. began praying out loud, asking God to help her. As he laughed, Vargas told V.R. that "they already had [it] all … planned out." He covered V.R.'s mouth, stifling her screams.

V.R. told Ramirez to think about their children. Ramirez was unmoved. At one point, V.R. ran but Ramirez chased her and grabbed her by her hair and face. He covered her mouth, hard.

While Ramirez was holding V.R.'s face, Vargas kissed her, bit her breast and back, and inserted his fingers into her vagina. Ramirez told Vargas to "go ahead" and "do it." V.R. cried and asked them to let her go. Neither Ramirez nor Vargas listened.

At some point during the attack, Ramirez had taken V.R.'s phone from her and tossed it. V.R. told Ramirez and Vargas that she needed to use the restroom so that they would leave her alone. When they did, V.R. retrieved her phone and dialed 911. She kept the line open and continued talking.

V.R. ran into the car and locked the doors, but Ramirez used his keys to unlock the door. He pulled V.R. out of the vehicle by her hair.[3]

Law enforcement officers arrived shortly thereafter. Ramirez hid behind the car. Vargas fled. Police officers found Vargas lying down on the ground in the orchard. He was apprehended with the assistance of a police K-9 after he failed to comply with an officer's commands.

---

[3] V.R. stated that she was undressed twice during the attack. She could not recall the circumstances or the manner in which she re-dressed herself.

V.R. was taken to the hospital. She had bite marks on her breast, neck, and shoulder.[4] V.R.'s hand was in pain because Ramirez twisted it when she attempted to escape.

## DISCUSSION

### I. Alleged Instructional Error on Count 4

Vargas claims that his conviction for attempted forcible rape on count 4 must be reversed because the jury was not instructed on the elements of section 264.1, attempt to commit forcible rape and rape by a foreign object acting in concert, the offense originally charged in the amended information. We conclude that Vargas has failed to show prejudicial error.

#### A. Background

The first amended information charged Vargas and his codefendant Ramirez with the following in count 4:

> "On or about July 3, 2019, in the County of Kings, State of California, the crime of Attempt to Commit Forcible Rape [Acting in Concert] And Rape By Foreign Object Acting In Concert in violation of PC664/PC264.1(a), a Felony, was committed in that JAVIER VARGAS RAMIREZ AND EFRAIN VARGAS did unlawfully and voluntarily acting with another person, personally and by aiding abetting the other person, commit an act described in Section 261, 262, and 289, by force and violence and against the will of the victim, to wit V.R."

Section 264.1, subdivision (a) provides the following: "when the defendant, voluntarily acting in concert with another person, by force or violence and against the will of the victim, committed an act described in Section 261 [rape] or 289 [penetration with a foreign object], either personally or by aiding and abetting the other person, that fact shall be charged in the indictment … and if found to be true by the jury, upon a jury trial, … the defendant shall suffer confinement in the state prison for five, seven, or nine years."

---

[4] V.R. had bite marks on her neck before the attack occurred.

Prior to the commencement of trial, the prosecutor initially requested jury instructions on the principles of aiding and abetting (CALCRIM Nos. 400 & 401), evidence of an uncharged conspiracy (CALCRIM No. 416), and as to count 4, attempted sexual penetration in concert (CALCRIM No. 1046). With respect to count 4, trial counsel requested jury instructions on attempt (CALCRIM No. 460) and rape in concert (CALCRIM No. 1001).

The final instruction packet, assembled by the trial court, omitted the instructions identified above. Following an in-chambers discussion about the jury instructions, the parties confirmed that no further instructions were being requested, and that the final instruction packet contained all required instructions. Thus, the jury was not instructed on the crimes of rape in concert, sexual penetration in concert, aiding and abetting, or evidence of an uncharged conspiracy.

As to count 4, the jury was instructed on the elements of attempted rape by force in violation of section 261, subdivision (a)(2). (See CALCRIM Nos. 460A & 1000).

It appears that once Ramirez entered his plea of no contest, the prosecutor sought to prove Vargas's guilt as to the charged offenses based upon his liability as a direct perpetrator, rather than by aiding and abetting, evidence of an uncharged conspiracy, or acting in concert with Ramirez.

The verdict forms and April 28, 2022 minute order reflect that Vargas was found guilty of attempted forcible rape (§§ 664/261, subd. (a)(2)) on count 4. Vargas was sentenced to the "upper term [sentence] of 54 months," or 4.5 years, on this count. The sentence was stayed pursuant to section 654.

## B. Relevant Legal Principles

"A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.] ... The challenged instruction is viewed 'in the

context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

### C.      Analysis

#### 1.      *Vargas Has Not Shown Instructional Error*

Vargas contends the jury was never instructed on the offense charged in count four of the amended information and that his conviction under section 264.1 must therefore be reversed. Although there is a variance between count 4 as it is charged in the amended information and the offense upon which the jury instructions were based, the variance was not prejudicial.

The record shows that Vargas was charged by amended information with attempted forcible rape in concert/rape by foreign object acting in concert (§ 264.1, subd. (a)). However, as to count 4, the jury was instructed only as to attempted forcible rape (§ 261, subd. (a)(2)). This was the only offense included on the verdict form on count 4. Thus, the jury found Vargas guilty of an attempted violation of section 261, subdivision (a)(2), and not, as Vargas claims, a violation of section 264.1.

The record does not explicitly show why the parties omitted attempted forcible rape in concert/rape by a foreign object while acting in concert as a basis for criminal liability. We surmise however that based upon the evidence adduced at trial and the fact that Ramirez had resolved his case by plea, this was an intentional omission.

At the time of Vargas's trial, Ramirez's guilt was a foregone conclusion. Prior to the commencement of trial, Ramirez entered a plea of no contest to the crimes of assault with the intent to commit rape (§ 220, subd. (a)(1), count 1), false imprisonment by violence (§ 236, count 3), and attempted rape in concert (§§ 664/264.1, count 4). Thus, the prosecutor did not need to prove that Vargas had acted in concert with Ramirez during the commission of the attempted rape of V.R.

7.

Further, because evidence of Ramirez's plea could cause prejudice to Vargas, the trial court instructed the parties not to mention Ramirez's plea, admission, or sentence to the jury. Under the circumstances, the prosecutor likely elected to prove Vargas's guilt on count 4 based upon Vargas's personal commission of the crime of attempted forcible rape. This would also explain why, as Vargas observes, instructions on aiding and abetting were requested in the prosecutor's pretrial motions but were ultimately omitted from the final instruction packet assembled by the trial court.

Following our independent review of the record, the only error we have found is that the amended information fails to reference the Penal Code section for the crime of attempted forcible rape, versus attempted forcible rape in concert.[5] The amended information was never amended to omit reference to attempted rape in concert or penetration by a foreign object in concert.

However, Vargas does not raise a due process challenge to the information on this basis. Nor would the record support such a claim. Vargas clearly had adequate notice that he was being charged with attempted forcible rape. The prosecutor merely elected not to prove the "in concert" element of the offense and not to proceed on a theory of rape by a foreign object. Based upon the forgoing, we reject Vargas's claim of instructional error.

### 2. *Remand for Resentencing is Required*

Vargas was sentenced to the upper term of 54 months in state prison on count 4, which amounts to 4.5 years. However, the upper term for a conviction for the attempted forcible rape of a non-minor victim which did not result in great bodily injury (§§ 664/261, subd. (a)(2)) is four years. (See, § 264, subd. (a) [the sentencing triad for

---

[5] The jury was instructed on lesser included offenses, including assault with the intent to commit rape and simple assault. However, after clarifying the elements of the crime of attempted forcible rape, it found Vargas guilty of the greater offense. Under the circumstances, it is difficult to imagine how Vargas could have been prejudiced.

rape under section 261 is three, six, or eight years in prison]; § 664, subd. (a) [with the exception of murder, attempted crimes are punishable "for one-half the term of imprisonment prescribed upon conviction of the offense attempted"].)

By imposing a prison sentence of 54 months on count 4, it appears that the trial court was relying on the probation officer's report which represented the applicable sentencing triad as 30 months (2.5 years), 42 months (3.5 years), and 54 months (4.5 years). That is the sentencing triad for a conviction for attempted rape *in concert*. (§§ 664/264.1, subd. (a)). As discussed, Vargas was not convicted of attempted rape in concert. Thus, the trial court committed sentencing error.

Based upon this error, we will remand this matter back to the lower court for a new sentencing hearing. (See, *People v. Massengale* (1970) 10 Cal.App.3d 689, 693 ["[w]hen a court pronounces a sentence which is unauthorized by the Penal Code, that sentence must be vacated and a proper sentence imposed"].)

## II.     The Evidence Supporting Vargas's Conviction on Count 4

Vargas further contends there is insufficient evidence supporting his conviction on count 4 for attempted forcible rape. The record belies his assertion.

### A.      Relevant Legal Principles

"When a defendant challenges the sufficiency of the evidence, ' "[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " [Citation.]' " (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.)

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Reversal is unwarranted "unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Vargas was convicted of attempted forcible rape on count 4. " 'Conviction of the crime of attempted forcible rape requires proof the defendant formed the specific intent to commit the crime of rape and performed a direct but ineffectual act, beyond mere preparation, leading toward the commission of a rape.' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 162.)

"A defendant's specific intent to commit rape may be inferred from the facts and circumstances shown by the evidence. [Citation.] As for the requisite act, the evidence must establish that the defendant's activities went ' "beyond mere preparation' and that they show the defendant was 'putting his or her plan into action." (*People v. Clark*, *supra*, 52 Cal.4th at p. 948.) " 'When, by reason of the defendant's conduct, the situation is "without any equivocality," and it appears the design will be carried out if not interrupted, the defendant's conduct satisfies the test for an overt act.' " (*Ibid*.) "An actual element of the offense … need not be proven." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1130, overruled in part on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

### B. Analysis

The evidence adduced at trial, viewed in the light most favorable to the prosecution, supports the conclusion that Vargas's actions went beyond " 'mere

preparation.' " (*People v. Clark, supra,* 52 Cal.4th at p. 948.) Vargas and Ramirez clearly had an unspoken plan. Ramirez lured V.R. into his vehicle where Vargas was lying down in the backseat. When Vargas began touching and kissing V.R., Ramirez said nothing. He drove to an isolated location, parked, and he and Vargas pulled V.R. out of the vehicle and removed her clothes.

Both Ramirez and Vargas made statements supporting the conclusion that there was a preconceived plan. Ramirez pushed V.R. into the vehicle and asked Vargas, "Isn't this what you have been wanting[?]" While V.R. pleaded with Ramirez to think about their children, Vargas laughed and told V.R. that they had it all planned out.

Although Vargas did not specify what specifically had been planned, his goal was reasonably inferable from the fact that he had removed V.R.'s clothes, digitally penetrated her, and fondled, kissed, and bit her. Vargas's plan was thwarted solely due to V.R.'s swift thinking and the timely reaction of law enforcement upon receiving her 911 call.

Had V.R. not managed to call for help, we have no doubt that Vargas would have forcibly raped her. Vargas's assertions to the contrary are unpersuasive. We conclude that substantial evidence supports his conviction for attempted forcible rape.

## III.    The Restitution Order

Finally, Vargas contends the trial court abused its discretion by making him liable for the full amount of direct victim restitution. He contends that the trial court erred by not imposing joint and several liability with Ramirez, his codefendant. Insofar as trial counsel failed to object to the restitution order below, Vargas asserts that his attorney rendered ineffective assistance of counsel.

Although trial counsel did not object to the restitution order, we exercise our discretion to reach this issue. (*People v. Young* (2017) 17 Cal.App.5th 451, 463 [fact that a party may forfeit a right to present a claim does not mean the appellate court is deprived

11.

of authority to reach the merits of the issue].) This matter is being remanded back to the lower court for resentencing based upon the unauthorized sentence imposed on count 4. On remand, we will direct the trial court to clarify the restitution order imposed below, specifically, whether it intended to impose joint and several liability upon Vargas and Ramirez.

### A. Background

The probation officer recommended that Vargas be ordered to pay $1,700 to the California Victim Compensation Board. The report did not recommend that restitution be imposed jointly and severally.

During sentencing, the trial court ordered Vargas to pay $1,700 in victim restitution to the Victim Compensation Board. The trial court did not expressly make Vargas jointly and severally liable, nor does the abstract of judgment or the order for victim restitution indicate joint and several liability as to the restitution amount ordered. Based on the available record, it is not clear what Ramirez was ordered to pay as compensation for direct victim restitution.

### B. Relevant Legal Principles

Penal Code section 1202.4, subdivision (f) provides the following, in relevant part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, ... the court shall require that the defendant make restitution to the victim or victims." Victim restitution is not only required by statute; it is mandatory under the California Constitution. (Cal. Const., art. I, § 28, subd. (b)(13)(A)-(B).)

Section 1202.4, subdivision (f) "does not expressly authorize joint and several liability restitution orders, neither does its provision prohibit such orders." (*People v. Arnold* (1994) 27 Cal.App.4th 1096, 1099.) Thus, the trial court has discretion to make the obligation of multiple codefendants joint and several. (*People v. Neely* (2009) 176

Cal.App.4th 787, 800; *People v. Madrana* (1997) 55 Cal.App.4th 1044, 1049, 1051-1052.)

The benefit of holding codefendants jointly and severally liable for the full amount of a crime victim's economic loss is that it avoids the problem of double recovery. (*People v. Leon* (2004) 124 Cal.App.4th 620, 622 ["a court may impose liability on each defendant to pay the full amount of the economic loss, as long as the victim does not obtain a double recovery"].) A restitution order is intended to compensate the victim for the actual loss, but it is not intended to provide the victim with recovery greater than that amount. (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172; *People v. Fortune* (2005) 129 Cal.App.4th 790, 795-796; see § 1202.4, subd. (f) [court shall require defendant make restitution to victim *in an amount based on the amount of loss claimed by the victim* or any other showing made to the court].)

Here, the trial court ordered Vargas to reimburse the California Victim Compensation Board for a $1,700 payment made to V.R. from the restitution fund for relocation expenses. The record contains no indication of what amount Ramirez was ordered to pay, if any, at his sentencing hearing. Because Vargas was not held jointly and severally liable, it is possible that direct victim restitution may potentially be paid twice—once by Ramirez and once by Vargas. However, because the available record contains insufficient information to permit us from making a conclusive determination on this point, no abuse of discretion has been shown.

On remand for Vargas's resentencing hearing, we will direct the trial court to clarify whether Vargas is solely responsible or jointly and severally liable for the $1,700 victim restitution award. If the trial court intended to impose joint and several liability for the award, it must correct the order for victim restitution and the abstract of judgment.

## **DISPOSITION**

The judgment of conviction is affirmed.  The sentence is vacated and the matter is remanded back to the trial court for a new sentencing hearing.  On remand, the trial court shall clarify whether it intended to impose joint and several liability on the direct victim restitution award.

SMITH, J.

WE CONCUR:

HILL, P. J.

DE SANTOS, J.

14.